Kathaleen A. Bassler HARSCH, Douglas M. Bihler, Thomas D. Kuehl, Paula C. Miller, and Lisa P. Tallar–Kuehl, Plaintiffs–Appellees, Cross–Appellants,

v.

Alan D. EISENBERG, Individually and as Trustee and Administrator of the Alan D. Eisenberg, S.C. Pension and Profit Sharing Plan, and as President and Sole Director of Alan D. Eisenberg, S.C., the Alan D. Eisenberg, S.C. Pension and Profit Sharing Plan, and Alan D. Eisenberg, S.C., a Wisconsin service corporation, Defendants–Appellants, Cross–Appellees.

Nos. 90–3169, 90–3303.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 6, 1991.

Decided Feb. 10, 1992.

As Amended Feb. 19, 1992.

L. William Staudenmaier, Brian C. Tyndall (argued), Paul J. Hinkfuss, Cook & Franke, Milwaukee, Wis., for plaintiffs-appellees.

Alan M. Levy (argued), Steven J. Slawinski, O'Neil, Cannon & Hollman, Milwaukee, Wis., for defendants-appellants.

Before CUDAHY and FLAUM, Circuit Judges, and ROSZKOWSKI, Senior District Judge.*

CUDAHY, Circuit Judge.

The principal question presented by this appeal is whether either extracontractual compensatory or punitive damages may be recovered by a beneficiary in an action for breach of fiduciary duty under ERISA. The district court held that punitive damages were not available in such an action, but that the compensatory damages sought by the plaintiffs were. We affirm the district court's holding as to punitive damages, but reverse on the issue of compensatory damages. We also affirm the denial of sanctions under Fed.R.Civ.P. 11, and vacate and remand the rulings on attorney's fees and sanctions under ERISA.

I.

This remarkably vexatious litigation arose out of a dispute between defendant Alan D. Eisenberg and some of his former employees over the distribution of the employees' pension benefits. Eisenberg is the president and sole director of defendant Alan D. Eisenberg, S.C., a Milwaukee law firm. The plaintiffs are former employees of the firm who left at various times dur-

---

* Honorable Stanley J. Roszkowski, Senior District Judge of the United States District Court for the Northern District of Illinois, sitting by designation.

ing 1986.[1] Prior to leaving the firm, all were participants in the Alan D. Eisenberg, S.C. Pension and Profit Sharing Plan (the Plan), of which Eisenberg was and is the named trustee and administrator.

Beginning with Lisa Tallar (now Tallar–Kuehl) in May of 1986, the plaintiffs made a number of requests to Eisenberg for information about and distribution of their benefits under the Plan. Tallar wrote to Eisenberg requesting payment of her benefits in May and July, and Paula Miller did the same in September. Neither received a response. Thomas Kuehl made oral requests for a distribution in July and September, which Eisenberg rebuffed with a variety of explanations and excuses why the benefits could not be paid at the time in question.

In January of 1987, Kuehl began to make written requests on behalf of all the plaintiffs for Plan documents and distribution of benefits. These requests continued through September 3, 1987. Eisenberg rebuffed all the requests, with increasing hostility.[2] The plaintiffs contended that according to the firm's practice and policy they were entitled to their benefits shortly after their departures from the firm. Eisenberg responded that the plaintiffs were not entitled to any payment until they reached retirement age (59 years), and demanded that the plaintiffs produce some "statutory, or contractual, authority" for their demands for information and benefits.

The plaintiffs filed this lawsuit against Eisenberg, Alan D. Eisenberg, S.C. and the Plan on November 24, 1987. The complaint alleged that Eisenberg had refused to comply with the plaintiffs' written requests for information and claims for benefits, in violation of the terms of the Plan, the policy and practice of the firm and ERISA. In addition to Plan documents and benefits, the plaintiffs sought compensatory and punitive damages. On December 16, the defendants filed their answer, in which they denied all liability, asserted that Kuehl had been responsible for administering the Plan and that therefore any alleged noncompliance with ERISA was a result of his actions, and requested costs and fees under Rule 11. Nevertheless, on December 24, 1987, the defendants notified the plaintiffs that all of the benefits sought by the plaintiffs would be paid. The plaintiffs received their first payment of benefits in January of 1988 (the defendants had offered to make payments in December, but the plaintiffs rejected the offer for tax reasons). Distribution was largely completed by March, with a few minor adjustments in April.

The defendants continued to deny liability for compensatory or punitive damages, and in April filed a counterclaim against Kuehl alleging that he had been a fiduciary with respect to the Plan during his employment with the firm and that he had breached his duties as a fiduciary by failing to ensure that the Plan complied with its obligations under ERISA. The defendants also moved to dismiss the complaint on the ground that neither compensatory nor punitive damages are available in an action brought by individual beneficiaries under ERISA. The court denied the motion to

---

1. Douglas Bihler left in March, Lisa Tallar in April, Kathaleen Bassler Harsch in May, and Thomas Kuehl and Paula Miller in August.

2. For example, on May 12, 1987, Eisenberg wrote to Kuehl:

> With respect to your pension and profit sharing accounts, we expect to be making a decision shortly as to whether or not we will be paying you off at age 59. Stay tuned.

On June 13, 1987, Eisenberg wrote:

> Kindly provide me with any authority that you may have that obligates me to pay you off before the year 2007. Unless you have some statutory, or contractual, authority, please do not contact me before June 30, 2007.
>
> . . . .

As to meeting with you at 5:00 p.m. on Monday, June 15, 1987, I do not wish to get into any arguments with you. I understand Peking, China, is nice at this time of the year, and I might consider meeting with you there but only if you can speak Chinese.

And on August 28, 1987:

> We are presently in receipt of your August 24, 1987, letter. Thank you for the marvelous collection of dog sled stamps on the envelope. The thought of your staff putting their "little" tongues on the backs of those stamps is just mind boggling; boggle, boggle, boggle.

Not surprisingly, this letter went on to refuse the plaintiffs' requests for payment and for documents regarding the Plan.

dismiss the compensatory damages claim, but agreed with the defendants that punitive damages could not be recovered under ERISA, and dismissed the plaintiffs' claim for such damages. The claim for compensatory damages and the counterclaim against Kuehl were tried to a jury over the defendants' objection. The jury ruled for the plaintiffs on both issues, and awarded $7,500 each to Tallar, Miller, Douglas Bihler and Kathaleen Bassler Harsch, and $25,000 to Kuehl. On the defendants' motion, all the awards except Kuehl's were subjected to substantial remittiturs on the ground that they bore no reasonable relationship to the evidence.

## II.

The civil enforcement provisions of ERISA appear in section 502(a) of the statute. That section provides in pertinent part:

> A civil action may be brought—
> (1) by a participant or beneficiary—
>
> .　　.　　.　　.　　.
>
> (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;
>
> .　　.　　.　　.　　.
>
> (3) by a participant, beneficiary or fiduciary (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

29 U.S.C. § 1132(a) (1988). The plaintiffs argue that both extracontractual compen-

satory and punitive damages are recoverable under either section 502(a)(1)(B) or section 502(a)(3)(B). The defendants contend that neither type of relief is available under any provision of section 502. We deal with each type of damages in turn.

### A. *Compensatory Damages*

The plaintiffs in this case sought a variety of damages that arose from the defendants' delay in payment of their benefits. Paula Miller claimed that she incurred additional interest expense on her credit card balance, which she would have paid off earlier if she had received the benefits due her from the Plan. Tom Kuehl and Lisa Tallar–Kuehl testified that the delay in payment caused their distributions to be subject to the less favorable provisions of the then-new Tax Reform Act of 1986. Douglas Bihler claimed that the delay forced him to forgo hiring a secretary for his new law practice for four months, which limited the time he could devote to billable work and resulted in a loss of income.[3] The defendants argue that all of these damages are extracontractual in nature and therefore not recoverable under either section 502(a)(1)(B) or section 502(a)(3) of ERISA.[4]

### 1. Section 502(a)(1)(B)

In *Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985), a beneficiary of an ERISA-governed employee benefit plan sued the plan administrator for compensatory and punitive damages arising out of the administrator's delay in processing her claim for disability benefits. The Ninth Circuit found that the petitioner had stated a cause of action under section 409(a) of

**3.** The other plaintiff, Kathaleen A. Bassler Harsch, offered no evidence of any actual loss resulting from the delay in distribution of her benefits.

**4.** The district court did not explicitly state under which provision of section 502 the plaintiffs' compensatory damages were recoverable. In addressing the plaintiffs' demand for jury trial, however, the court stated:

> Plaintiffs' jury trial right arises solely under 29 U.S.C. § 1132(a)(1)(B). Other ERISA pro-

visions providing for civil enforcement appear inapplicable (see above discussion of 29 U.S.C. § 1132(a)(2)) or do not afford a right to jury trial. *See, e.g., Cox v. Keystone Carbon Co.*, 861 F.2d 390 (3d Cir.1988).

Order at 6 (Jan. 23, 1989). *Cox* holds that there is no right to a jury in a case brought under section 502(a)(3). Since the district court held that the plaintiffs in this case *were* entitled to a jury trial on their claims for compensatory damages, the court must have understood those claims to arise under section 502(a)(1)(B).

ERISA that could be asserted by a beneficiary under section 502(a)(2). The Supreme Court reversed, holding that "extracontractual damages caused by improper or untimely processing of benefit claims," *id.* at 136, 105 S.Ct. at 3087, may not be recovered in an action brought by a beneficiary to redress a violation of section 409(a).

The *Russell* Court did not expressly consider whether extracontractual damages might be available under ERISA section 502(a)(1)(B). Nevertheless, its opinion has important implications for that issue. In support of its holding, the *Russell* Court made the following observation:

> Significantly, the statutory provision explicitly authorizing a beneficiary to bring an action to enforce his rights under the plan—§ 502(a)(1)(B) ...—says nothing about the recovery of extracontractual damages, or about the possible consequences of a delay in the plan administrators' processing of a disputed claim. Thus, there really is nothing in the statutory text to support the conclusion that such a delay gives rise to a private right of action for compensatory or punitive relief.

*Id.* at 144, 105 S.Ct. at 3091. The Court also found that, in light of ERISA's carefully crafted remedial scheme, the complete absence in section 502(a) of any mention of extracontractual damages demonstrates Congress' deliberate intent not to afford such a remedy:

> The six carefully integrated civil enforcement provisions found in § 502(a) of the statute as finally enacted ... provide strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly.

*Id.* at 146–47, 105 S.Ct. at 3092 (citation omitted) (emphasis in original).

■ We can see—particularly as illustrated by the case at bar—good reasons to allow beneficiaries to recover extracontractual damages under ERISA. But the Fourth Circuit, relying on *Russell,* has held that extracontractual compensatory damages are not available under section 502(a)(1)(B). *See Reinking v. Philadelphia American Life Ins. Co.,* 910 F.2d 1210 (4th Cir.1990) (denying claim for extracontractual damages for emotional distress). Although the policy implications in cases such as the one before us may be troubling, we have no choice but to agree. Any other conclusion would appear to be at odds with the plain meaning of the Supreme Court's statements in *Russell.* Another interpretation would also seem to do some violence to the language of section 502(a)(1)(B), which appears to limit beneficiaries to *contractual* claims by providing only for actions based upon or arising "under the terms of the plan."

■ The question, then, is whether the plaintiffs' damage claims in this case are "extracontractual" within the meaning of *Russell.* The plaintiffs argue that their claims are within the scope of section 502(a)(1)(B) because the plaintiffs are attempting to enforce their right "under the terms of the plan" to "proper treatment by the plan fiduciary under 29 U.S.C. § 1104(a)(1)." We reluctantly conclude, however, that the plaintiffs' damages in this case cannot be distinguished in any principled way from those claimed by the plaintiff in *Russell,* and are therefore not recoverable under section 502(a)(1)(B).

The *Russell* plaintiff alleged that the plan administrator's improper interruption of her benefit payments "forced [her] disabled husband to cash out his retirement savings which, in turn, aggravated the psychological condition that caused [her] back ailment." 473 U.S. at 137, 105 S.Ct. at 3087. Thus, like the plaintiffs in this case, she sought compensation for injuries that resulted directly from the administrator's alleged breach of fiduciary duty. The plaintiffs try to draw a distinction between their injuries and Russell's based on the fact that Russell's injuries were physical while their own are financial. But this fact does not make the plaintiffs' claims any more "contractual" than those in *Russell.* The Court did not consider Russell's claims "extracontractual" on the theory that they sought compensation for physical injuries, but because they were distinct from the "benefits to which she [was] contractually entitled," which she had already received.

*Id.* at 136, 105 S.Ct. at 3087. The same is true of the plaintiffs' claims in the case before us. The plaintiffs' attempt to characterize their suit as seeking to enforce a contractual right to "proper treatment" under the terms of the Plan is ingenious. But the *Russell* claim was susceptible of precisely the same characterization: the plan administrator there had the same fiduciary duty as the administrator here, and hence the plaintiff had the same right to proper treatment. In neither case did the "terms of the plan" entitle beneficiaries to compensatory damages resulting from a delay in payment of benefits.

Finally, we do not think it appropriate to find an *implied* remedy of compensatory damages in this case. The *Russell* Court explicitly cautioned against implication of remedies under ERISA:

> We are reluctant to tamper with an enforcement scheme crafted with such evident care as the one in ERISA.... "[W]here a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it."

*Id.* at 147, 105 S.Ct. at 3093 (quoting *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 19, 100 S.Ct. 242, 247, 62 L.Ed.2d 146 (1979)). The Court has also emphasized in other decisions its strong opposition to the judicial expansion of ERISA's remedies or causes of action. In *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987), the Court held that ERISA preempted plaintiff's state law tort and contract damage claims arising from the allegedly improper processing of his benefit claim. In so holding, the Court stated:

> In sum, the detailed provisions of § 502(a) set forth a comprehensive civil enforcement scheme that represents a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans. The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA.

*Id.* at 54, 107 S.Ct. at 1556; *see also Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). Therefore, we believe that extracontractual compensatory damages, such as those sought by the plaintiffs here, are not available in an action by an individual beneficiary under section 502(a)(1)(B).

2. Section 502(a)(3)

We are also dubious about the plaintiffs' contention that their claims for extracontractual damages are sustainable as "other appropriate equitable relief" under ERISA section 502(a)(3). Compensatory damages are a classic form of *legal*, not equitable, relief. In its report on ERISA, the Senate Finance Committee discussed "appropriate equitable relief" in the following terms:

> Appropriate equitable relief may be granted in a civil action. For example, injunctions may be granted to prevent a violation of fiduciary duty, and a constructive trust may be imposed on the plan assets.... Also, the bill specifically provides that a fiduciary may be removed through civil action brought by the Secretary or participants or beneficiaries....

S.Rep. No. 383, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.C.C.A.N. 4890, 4989. Based in part on this passage, the Ninth Circuit has held that "appropriate equitable relief" under section 502(a)(3) does not include extracontractual compensatory damages. *See Sokol v. Bernstein*, 803 F.2d 532 (9th Cir.1986). As the court stated in that case:

> [I]t appears that Congress used the word "equitable" to mean what it usually means—injunctive or declaratory relief. The [Senate Finance Committee's] definition of "appropriate equitable relief" lists three distinct remedies (injunction, constructive trust, and removal), all of which are closely tied to the plan. For us to add an extra-contractual remedy to a list of remedies so strongly contractual in nature would be to step beyond the

province of the judiciary and into that of the legislature.

*Id.* at 537–38. The First Circuit has also ruled that "other appropriate equitable relief" does not encompass a beneficiary's claim for extracontractual damages. *See Drinkwater v. Metropolitan Life Ins. Co.,* 846 F.2d 821, 824 (1st Cir.), *cert. denied,* 488 U.S. 909, 109 S.Ct. 261, 102 L.Ed.2d 249 (1988); *see also Powell v. Chesapeake & Potomac Tel. Co.,* 780 F.2d 419, 424 (4th Cir.1985), *cert. denied,* 476 U.S. 1170, 106 S.Ct. 2892, 90 L.Ed.2d 980 (1986) (rejecting plaintiff's argument that beneficiaries may seek extra-contractual damages from a fiduciary as "other appropriate equitable relief" under traditional principles of trust law which Congress intended to engraft upon ERISA).

The Supreme Court has never addressed the availability of extracontractual damages under section 502(a)(3). In fact, the Court specifically reserved that question in *Russell.* Nevertheless, most circuits have found much of the *Russell* Court's reasoning in holding that extracontractual damages are not available under ERISA section 409(a) equally applicable to section 502(a)(3). With one exception, every circuit that has addressed the issue since *Russell* has held that extracontractual damages may not be recovered under section 502(a)(3). *See McRae v. Seafarers' Welfare Plan,* 920 F.2d 819, 821 (11th Cir. 1991); *Drinkwater,* 846 F.2d at 824; *Sokol,* 803 F.2d at 538; *Powell,* 780 F.2d at 424. *See also Forys v. United Food & Commercial Workers Int'l Union,* 829 F.2d 603, 604 n. 2 (7th Cir.1987) (dicta); *Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan Enterprises, Inc.,* 793 F.2d 1456, 1464 (5th Cir. 1986) (dicta).

The Ninth Circuit's opinion in *Sokol* (whatever may be our view of the outcome) makes some telling points. The *Sokol* court first noted that section 502(a)'s "other appropriate equitable relief" clause is strikingly similar to section 409(a)'s "other appropriate equitable or remedial relief" clause, under which the Supreme Court in *Russell* refused to infer a cause of action for extra-contractual damages. The court

also found "considerable support in *Russell* for the proposition that no provision in ERISA authorizes the award of extra-contractual damages." *Sokol,* 803 F.2d at 535. In particular, the court noted that "*Russell* held that the fiduciary duties set forth in § 409 run only to the plan, and not to individual beneficiaries. In so holding, the *Russell* Court used language implying that *all* of the statute's provisions relating to fiduciary duties run only to plans, and not to beneficiaries as individuals." *Id.* (citation omitted) (emphasis in original). The Ninth Circuit also emphasized the *Russell* Court's reliance on "Congress' glaring omission of any mention of extra-contractual damages." *Id.* at 536. As the court concluded:

> [I]t must be noted that § 502(a)(3) also "says nothing about the recovery of extra-contractual damages," *Russell,* 105 S.Ct. at 3091, and emphasizes protection of the *plan,* not the direct protection of the beneficiaries. So viewed, the catchall phrase of "other appropriate equitable relief" in § 502(a)(3) provides no more foundation for an award of emotional distress damages than does the same catchall [sic] phrase in § 409(a).

*Id.* (emphasis in original). If anything, section 502(a)(3) may provide even less support for an award of compensatory damages than does section 409(a) since only the latter provides for "other remedial relief" in addition to "appropriate equitable relief."

This court has relied on the reasoning of *Russell* in addressing the closely related question of punitive damages, holding that such damages are not an available remedy under section 502(a)(3) of ERISA. *Kleinhans v. Lisle Sav. Profit Sharing Trust,* 810 F.2d 618 (7th Cir.1987). Like the Ninth Circuit, we placed particular emphasis on the *Russell* Court's observation regarding the "stark absence" of support for such a remedy in the statutory text and the legislative history of ERISA, and on the presumption that such absence indicated that Congress had deliberately excluded the remedy from ERISA's comprehensive remedial scheme. *Id.* at 626. We also found that these observations were as relevant to

section 502(a)(3) as to section 409(a). The reasoning we applied to *punitive* damages in *Kleinhans* leads us to conclude that extracontractual *compensatory* damages are equally unavailable under section 502(a)(3).

The plaintiffs, however, argue that the Sixth Circuit's decision in *Warren v. Society National Bank,* 905 F.2d 975 (6th Cir. 1990), supports their position that the damages they seek are recoverable as "other equitable relief" under section 502(a)(3). In *Warren,* the Sixth Circuit held that a plan beneficiary could recover damages under section 502(a)(3) for the increased tax liability he incurred as a result of the plan administrator's failure to carry out the beneficiary's instructions in transferring his share of the plan assets. The court found that *Russell* did not preclude recovery of these damages because the plaintiff's claim in *Warren* "differ[ed] from that of the plaintiff in *Russell* in two respects: (1) the nature of the alleged injuries and the relief sought, and (2) the statutory bases for the claim." *Id.* at 980.

According to the Sixth Circuit, Dr. Warren's claim differed from that of the plaintiff in *Russell* because in Dr. Warren's case the plan administrator "violated a contractual duty under the retirement plans to distribute his plan assets in accordance with his instructions." *Id.* The injuries Dr. Warren suffered were "direct injuries resulting from" that breach. *Id.* The *Russell* plaintiff, by contrast,

> made no claim that the fiduciary of her disability plan violated a contractual duty. In fact, the plaintiff had received all the benefits to which she was contractually entitled. Also, rather than seeking damages for direct injuries, the plaintiff sought punitive damages and damages for the consequential injuries of emotional distress and the necessity of cashing out her husband's retirement savings.

*Id.* Though well-intentioned, we do not find compelling the attempt to distinguish the injuries claimed by Dr. Warren from those alleged by the plaintiff in *Russell.* The *Russell* Court made no mention of the "directness" of the plaintiff's injuries in characterizing her claims as "extracontractual." Further, to the extent that one can draw a legitimate distinction between the two cases based on the "contractual duty" allegedly violated by the defendants in *Warren,* that distinction would appear to hurt rather than help the plaintiffs in the case at bar. As we have noted, the "contractual duty" alleged here existed in *Russell* as well, and presumably in every other case that has involved a violation of fiduciary duty. It would be difficult to treat this case differently based solely on the plaintiffs' artful framing of the issue.

More significant to the Sixth Circuit's decision were the different statutory bases of the two actions. The court correctly observed that because Dr. Warren had brought his action under section 502(a)(3) rather than section 409(a), *Russell* was not dispositive. The court went further, however, stating that "since the majority opinion in *Russell* did not deal with section 502(a)(3), questions arising under that section remain open." *Id.* at 981. Although literally correct, this observation ignores some of the broader implications of the *Russell* Court's reasoning. Rather than following those implications, the Sixth Circuit apparently relied heavily on the reasoning of Justice Brennan's concurring opinion in *Russell.* That separate opinion argued cogently that ERISA was intended to incorporate the law of trusts and therefore "a beneficiary is entitled to a remedy 'which will put him in the position in which he would have been if the trustee had not committed the breach of trust.'" *Russell,* 473 U.S. at 157 n. 16, 105 S.Ct. at 3098 n. 16 (Brennan, J., concurring in the judgment) (quoting Restatement (Second) of Trusts § 205, and Comment a (1959)). That remedy may include monetary damages. *Id.* at 154 n. 10, 105 S.Ct. at 3096 n. 10.

There is a good deal to be said for Justice Brennan's position on grounds of policy and, perhaps, of justice. But it is not a position endorsed by the Supreme Court majority in *Russell.* As Justice Brennan observed in his concurrence:

There is dicta in the Court's opinion ... that could be construed as sweeping more broadly than the narrow ground of resolution set forth above. Although the Court takes care to limit the binding effect of its decision to the terms of § 409, its opinion at some points seems to speak generally of whether fiduciaries ever may be held personally liable to beneficiaries for extracontractual damages.

*Russell,* 473 U.S. at 150–51, 105 S.Ct. at 3094–95 (Brennan, J., concurring in the judgment). Although we might be sympathetic to the finding of a broader remedy in section 502, the *Russell dicta,* which commanded majority support in the Supreme Court and have generally carried the day in the courts of appeals, seem to require us to reject extracontractual remedies. While a broader remedial view might serve the ends of justice in the case before us, we do not think such a view is consistent with the reasoning of *Russell.*

The plaintiffs' final and perhaps most persuasive argument is that the Supreme Court adopted their position in the recent decision of *Ingersoll–Rand Co. v. McClendon,* —— U.S. ——, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990). The immediate issue in *Ingersoll–Rand* was not the availability of extracontractual damages under ERISA, but the scope of ERISA's preemption of state law claims. Perry McClendon claimed that Ingersoll–Rand had fired him in order to "avoid making contributions to his pension fund." *Id.* 111 S.Ct. at 481. McClendon sued the company in Texas state court under various tort and contract theories, seeking compensatory and punitive damages. *Id.* The Supreme Court, in an opinion by Justice O'Connor, held that McClendon's causes of action under state law were preempted by ERISA. The basis of the plaintiffs' argument, however, is not the actual holding of *Ingersoll–Rand* but the final paragraph of the opinion, in which Justice O'Connor wrote:

> The preceding discussion also responds to the Texas court's attempt to distinguish this case as one not within ERISA's purview.... [T]here is no basis in § 502(a)'s language for limiting ERISA actions to only those which seek "pension benefits." It is clear that the relief requested here is well within the power of federal courts to provide. Consequently, it is no answer to a pre-emption argument that a particular plaintiff is not seeking recovery of pension benefits.

*Id.* 111 S.Ct. at 486. Based on this surprising language, the plaintiffs argue with considerable plausibility that *Ingersoll–Rand* supports their claims for extracontractual damages, including punitive damages, under ERISA.

Some courts have indeed read *Ingersoll–Rand* as overruling *Russell* and its progeny. In *Blue Cross and Blue Shield v. Lewis,* 753 F.Supp. 345 (N.D.Ala.1990), the Northern District of Alabama stated: "According to *Ingersoll–Rand,* a court, state or federal, in an ERISA case, may, as an ERISA remedy, award extra-contractual, even punitive, damages, that is, if the facts call for such a remedy." *Id.* at 347. *See also International Union, United Automobile, Aerospace and Agricultural Implement Workers v. Midland Steel Products Co.,* 771 F.Supp. 860, 863 (N.D.Ohio 1991) ("The Supreme Court's holding in *Ingersoll–Rand v. McClendon* ... conclusively establishes the availability of legal remedies under ERISA."); *Haywood v. Russell Corp.,* 584 So.2d 1291, 1297 (Ala. 1991) ("The Supreme Court, in *Ingersoll–Rand,* has now specifically held that the courts are authorized to award damages, both extracontractual, and even punitive, where the facts support them, even though they are not specifically provided for in ERISA.").

Other courts disagree. In *O'Neil v. Gencorp, Inc.,* 764 F.Supp. 833 (S.D.N.Y.1991), the Southern District of New York granted GenCorp's motion to dismiss the plaintiffs' claim for punitive damages on the ground that punitive damages are unavailable as a remedy for breach of fiduciary duty under ERISA. Rejecting the plaintiffs' argument that *Ingersoll–Rand* supported their claim for punitive damages, the Southern District observed:

Had Justice O'Connor intended, as plaintiffs claim, that [her] analysis of § 510 was overruling the considerable amount of federal caselaw barring punitive and extracontractual damages under ERISA (particularly the cases which specify that punitive damages are unavailable under § 510), she undoubtedly would have so stated.

Furthermore, since Justice O'Connor's *dicta* in *Ingersoll–Rand* discusses remedies under § 502(a) generally and are not limited to § 502(a)(3), one would also expect an explanation of the effect on *Russell*'s holding that punitive damages are unavailable under § 502(a)(2), as well as a distinction from *Russell*'s elaborate rationale for generally excluding punitive damages in ERISA actions.

*Id.* at 834. *See also Gaskell v. Harvard Coop. Society*, 762 F.Supp. 1539, 1544 (D.Mass.1991) ("[H]ad the Supreme Court intended to expand the realm of potential relief available under ERISA, ... it would have done so explicitly. Such a departure from precedent likely would not have been accomplished in a single sentence, in dicta, at the close of an opinion focused exclusively on a wholly different issue."); *Monfiletto v. John Hancock Healthplans, Inc.*, Civ. No. 90–5137, 1991 WL 231608, at *2, 1991 U.S. Dist LEXIS 15875, at *5 (E.D.Pa. Oct. 30, 1991). The Eleventh Circuit, in holding that extracontractual damages are not available under section 502(a)(3), explicitly found that such a holding did not conflict with *Ingersoll–Rand*. *See McRae v. Seafarers' Welfare Plan*, 920 F.2d 819 (11th Cir.1991). Judge John Minor Wisdom, sitting by designation, explained the *Ingersoll–Rand* dicta as follows:

The Supreme Court was stating that federal law provides relief for ERISA actions other than those that seek to recover pension benefits, such as the plaintiff's cause of action for wrongful termination. The Supreme Court is not holding that the specific *remedies* this plaintiff had sought under state law are necessarily the remedies that will be afford-ed him should he be granted *relief* under ERISA § 502.

*Id.* at 821.

Although we do not necessarily subscribe to this or any other explanation of what the Supreme Court might have meant by the *Ingersoll–Rand* dicta, we are not rash enough to believe that the Court intended to overrule settled law in most of the circuits, as well as narrowly limit—if not overrule—its own decision in *Russell* in such an off-hand manner. Of course, we do have a "plain meaning" argument to contend with. And it is possible that Justice O'Connor *did* intend to limit *Russell* severely. Nevertheless, we think the prudent course is to follow Judge Wisdom in his interpretation. We will continue to doubt the availability of extracontractual damages under ERISA until a more plausible signal reaches us from above.

### B. *Punitive Damages*

Although the district court allowed the plaintiffs' compensatory damage claims to be tried, it dismissed their claims for punitive damages on the ground that such damages are not available in an action by a beneficiary under either section 502(a)(1)(B) or section 502(a)(3) of ERISA. The plaintiffs have cross-appealed that ruling.

### 1. Section 502(a)(1)(B)

In dismissing the plaintiffs' claims for punitive damages under section 502(a)(1)(B), the district court explicitly relied on the Supreme Court's decision in *Russell*. As noted, the Court held in *Russell* that extracontractual compensatory and punitive damages are not available in an action for breach of fiduciary duty brought by a beneficiary to redress a violation of section 409(a) of ERISA. Based on the Court's reasoning in that case, we have held that extracontractual compensatory damages are also not recoverable under section 502(a)(1)(B). The same reasoning supports the district court's conclusion that punitive damages are similarly unavailable under section 502(a)(1)(B). The *Russell* Court treats compensatory and punitive damages together, under the rubric of "ex-

tracontractual damages." Therefore, if *Russell* means that beneficiaries cannot recover extracontractual compensatory damages under section 502(a)(1)(B), then punitive damages must be unavailable as well.

### 2. Section 502(a)(3)

■ This court has already held that punitive damages are not recoverable under section 502(a)(3). *See Kleinhans v. Lisle Savings Profit Sharing Trust,* 810 F.2d 618, 627 (7th Cir.1987). This holding is consistent with that of every other circuit that has addressed the issue. *See Amos v. Blue Cross–Blue Shield,* 868 F.2d 430 (11th Cir.), *cert. denied,* 493 U.S. 855, 110 S.Ct. 158, 107 L.Ed.2d 116 (1989); *Pane v. RCA Corp.,* 868 F.2d 631, 635 n. 2 (3d Cir.1989); *Drinkwater v. Metropolitan Life Ins. Co.,* 846 F.2d 821 (1st Cir.1988); *Varhola v. Doe,* 820 F.2d 809 (6th Cir. 1987); *Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan Enterprises, Inc.,* 793 F.2d 1456 (5th Cir. 1986); *Sokol v. Bernstein,* 803 F.2d 532 (9th Cir.1986); *Powell v. Chesapeake & Potomac Tel. Co.,* 780 F.2d 419 (4th Cir. 1985).[5]

### III

In addition to their primary claims regarding the availability of compensatory and punitive damages under ERISA, the parties allege error in the district court's rulings on a number of other issues. Specifically, the defendants appeal the court's rulings that the plaintiffs had a right to a jury trial on their claim for compensatory damages and that Kuehl's increased tax liability may have resulted from the defendants' unjustified delay in distributing his benefits. The defendants also argue that the trial court erred in refusing to impose sanctions on the plaintiffs under Fed.

R.Civ.P. 11. The plaintiffs cross-appeal the district court's refusal to impose on the defendants statutory penalties provided by ERISA for failure to produce Plan documents upon request. Both parties challenge the court's calculation of the attorney's fees awarded to the plaintiffs.

We need not address the defendants' claims regarding jury trial and Kuehl's damages because they have been mooted by our holding in Part II that the plaintiffs' compensatory damages are not recoverable under ERISA. We discuss each of the other claims in turn.

### A. Rule 11 Sanctions

■ The district court rejected the defendants' request for sanctions based on five motions filed by the plaintiffs during the first six months of the litigation, all of which were denied by the court. The district court found that, "[g]iven the heightened animosity and accompanying zeal marking this litigation, sanctions appear unwarranted." Order at 1–2 (Aug. 2, 1990). We review the district court's ruling on Rule 11 sanctions for "abuse of discretion." *Mars Steel Corp. v. Continental Bank N.A.,* 880 F.2d 928, 930 (7th Cir.1989) (en banc). This standard applies "whether sanctions were imposed or not." *Id.* The defendants have not shown that the district court abused its discretion by refusing to impose sanctions in this case. This court has stated that Rule 11 "is a law imposing sanctions if counsel files with improper motives or inadequate investigation." *Id.* at 932. The defendants have failed to establish that either of these factors was present here. The fact that the court denied several pre-trial motions filed by the plaintiffs does not necessarily import a violation of Rule 11. As we have

**5.** The Supreme Court's decision in *Ingersoll–Rand* does not change the result under either section 502(a)(1)(B) or section 502(a)(3). The "relief requested" in *Ingersoll–Rand,* which Justice O'Connor states is "within the power of the federal courts to provide," does include punitive damages. However, the argument against construing these dicta to mean that such damages may be recovered under ERISA is even stronger in the context of punitive damages than in that of compensatory damages; there is more circuit court precedent directly addressing the issue of punitive damages, and that precedent uniformly holds that such damages are not available under ERISA. Thus, it would be even more rash to conclude that the Court overruled all of this precedent without so much as a footnote reference to it, although again "plain meaning" may cut the other way.

observed, "Rule 11 focuses on ... conduct rather than result." *Id.* Although the district court noted that the plaintiffs' counsel had taken an "unyielding approach to discovery" at the outset of the litigation, Order at 3 (May 11, 1988), the court did not characterize any of the plaintiffs' motions as "frivolous." Nor did the judge find that any of them had been filed with "improper motives." The defendants do not point to any evidence in the record that compels either of these conclusions. We affirm the district court's denial of Rule 11 sanctions.

### B. *Statutory Penalties*

■ The plaintiffs asked the district court to impose statutory penalties on the defendants as a sanction for the defendants' refusal to comply with the plaintiffs' repeated requests for information about the Plan. The district court denied the plaintiffs' request, ruling that "[a]ny damage or prejudice suffered by the plaintiffs as a result of the defendants' failure to freely provide information ... is directly reflected in the tardy payment of benefits," for which the plaintiffs would receive compensatory damages. Order at 2 (Aug. 2, 1990). Thus, the court concluded, it was "unnecessary to consider imposing statutory penalties." *Id.* The plaintiffs contend that the district court's ruling is incorrect as a matter of law because the court focused on the question of actual prejudice or damage in denying penalties. We reject this argument.

Section 502(c) of ERISA clearly commits the determination whether or not to impose statutory penalties to the discretion of the district court. The statute provides:

> Any administrator ... who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary ... *may in the court's discretion* be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal ...

29 U.S.C. § 1132(c)(1)(B) (1988) (emphasis supplied). The plaintiffs, however, argue that under our decision in *Ziaee v. Vest,* 916 F.2d 1204 (7th Cir.1990), a district court abuses its discretion when it denies a request for penalties based on the injury suffered by the plaintiffs as a result of the defendants' violation. The plaintiffs' reliance on *Ziaee* is misplaced. In that case we reversed and remanded a district court judgment granting substantial statutory penalties on the ground that the court had not made sufficient findings to support the award. In the course of doing so, however, we rejected the defendants' claim that *no award* was permitted because the plaintiffs had not demonstrated injury from the delay. Rather, we said, "[t]he statute commits the size of the penalty to the district judge's discretion; the judge may, but need not, consider the provable injury when exercising that discretion." *Id.* at 1210. This statement is permissive rather than restrictive; the fact that the district court may award statutory penalties even when there is no provable injury by no means suggests that the court may not *deny* penalties when there *is* injury. Contrary to the plaintiffs' argument, *Ziaee* reinforces rather than constricts the district court's discretion in this area.

In the case before us, however, the district court based its decision to deny statutory penalties on a fact that no longer obtains because of our reversal of the judgment as to compensatory damages. Therefore, we vacate the court's judgment denying statutory penalties and remand for further proceedings consistent with this opinion.

### C. *Attorney's Fees*

The plaintiffs sought attorney's fees in the amount of $146,000 under section 502(g)(1) of ERISA. Section 502(g)(1) provides:

> In any action under this subchapter ... by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.

29 U.S.C. § 1132(g)(1) (1988). The district court granted the plaintiffs' request for fees, but awarded only $47,729.81 because it found the plaintiffs' billing records inade-

quate to allow the court to "exclude hours not 'reasonably expended.'" Order at 8 (Aug. 2, 1990). Therefore, the court decided to "determine the fee equitably," by treating the case "as one pursued on a contingent fee basis," and awarded the plaintiffs attorney's fees in an amount approximately one-third of their total recovery. *Id.* at 9. The plaintiffs argue that the district court's reduction of their attorney's fees constitutes an abuse of discretion. The defendants argue that the plaintiffs should receive far less than they were awarded by the district court because their action for compensatory damages was not one brought "under this subchapter" of ERISA. We address the defendants' contention first.

■ We agree with the defendants that the plaintiffs should not be able to recover attorney's fees for that portion of the litigation that dealt with compensatory damages. In light of our analysis above, an action for compensatory damages resulting from a plan fiduciary's breach of fiduciary duty is not an "action under this subchapter [Title I]" of ERISA. The fact that this circuit had not previously resolved that issue does not change this result. The defendants should not have to bear a greater burden than the plaintiffs because of that uncertainty. On remand, then, the district court may award the plaintiffs only those fees reasonably attributable to claims that may be brought under ERISA: that is, claims for benefits due, statutory penalties and the like.

■ The question remains, however, whether the district court on remand may use the same method to calculate the fee award that it did the first time around. We conclude that the district court's approach, though somewhat unorthodox, did not constitute an abuse of discretion. Nevertheless, we consider the lodestar method to be more appropriate in a case such as this one, and recommend that the court employ that approach on remand.

In *Kirchoff v. Flynn*, 786 F.2d 320 (7th Cir.1986), we held that under appropriate circumstances a court could use contingent fees as a "benchmark" in making an award of attorney's fees under 42 U.S.C. § 1988. Judge Easterbrook, writing for the court, explained that:

> A court's objective is to find the rates "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." [citation omitted] When the "prevailing" method of compensating lawyers for "similar services" is the contingent fee, then the contingent fee *is* the "market rate."

*Id.* at 324. We think that, in certain cases, this reasoning may be equally applicable to the award of fees under ERISA. Both section 1988 and ERISA require the district court to determine a "reasonable" attorney's fee. We see no reason to conclude that using the "market rate" for services as a guideline is appropriate under section 1988 but not under the perhaps less plaintiff-oriented ERISA fee-shifting provision. *Cf. Bandura v. Orkin Exterminating Co.*, 865 F.2d 816, 822 (7th Cir.1988) (upholding district court's application of *Kirchoff* "market rate" rule in determining a "reasonable attorneys' fee" under Illinois Consumer Fraud and Deceptive Practices Act). Therefore, if the plaintiffs' claims are of the type that in the private market would be the subject of a contingency agreement, the district court did not abuse its discretion in relying on a contingent fee standard in determining the appropriate attorney's fees.

Nevertheless, we recommend that the district court employ the lodestar method on remand if at all feasible. As the *Kirchoff* court noted: "[T]he use of contingent fees is appropriate in cases that enforce old precedents and allow effective compensation as a percentage of the total recovery," while "the lodestar approach is best in cases with substantial injunctive or precedent-creating components." 786 F.2d at 328. This case would seem to fall within the latter category.

## IV

For the foregoing reasons, we REVERSE the judgment awarding the plaintiffs compensatory damages and AFFIRM the dismis-

sal of the plaintiffs' claims for punitive damages. We also AFFIRM the denial of sanctions under Fed.R.Civ.P. 11. We VACATE the denial of statutory penalties and the award of attorney fees and REMAND those issues for further proceedings consistent with this opinion.

FLAUM, Circuit Judge, concurring.

Although I agree with the judgment of the court, unlike the majority I am neither "reluctant" nor "dubious," *see ante* at 655, 656, in determining that extra-contractual damages are not available under either section 502(a)(1)(B) or section 502(a)(3) of ERISA. Supreme Court precedent and statutory interpretation, as well as the great majority of other circuits which have considered the issue, all point in the direction of excluding such damages. I would therefore find that extra-contractual damages are excluded without second-guessing the wisdom of policy determinations already made by Congress.

Part IIA contains numerous references to the "troubling" implications of excluding extra-contractual damages. It notes, for example, that "on grounds of policy and, perhaps, of justice," a good deal can be said for allowing extra-contractual damages under section 502. *Ante* at 658. In the abstract, that may be so. But ERISA, like all legislation, is the result of compromise and policy decisions. One of those decisions, as the Ninth Circuit observed in *Sokol v. Bernstein*, 803 F.2d 532, 537 (9th Cir.1986), was the determination "that the entire statute was aimed at the protection of the integrity of pension plans, rather than at direct protection of beneficiaries." The majority advances views as to the advisability of Congress's policy choice. In this context, I do not consider it appropriate or necessary to speculate on the merit of these congressional determinations. Regardless of whether we are "sympathetic" to allowing plaintiffs to recover extra-contractual damages in ERISA actions, *ante* at 659, given the relevant legislative history, statutory interpretation, and case law, they should be excluded.

Unlike the majority, I do not find the Sixth Circuit's attempt in *Warren* to distinguish *Massachusetts Life Insurance Company v. Russell*, 473 U.S. 134, 147, 105 S.Ct. 3085, 3092–93, 87 L.Ed.2d 96 (1985), to be "well-intentioned." *Ante* at 658. Indeed, I find it somewhat disturbing that the court did not choose to follow the reasoning of the majority opinion in *Russell* "as setting a proper guide to follow rather than Justice Brennan's separate opinion which speaks for a minority of the Court." *Warren v. Society Nat'l Bank*, 905 F.2d 975, 984 (Wellford, J., dissenting). Such an approach merely "tampers with an enforcement scheme" crafted with evident care by ERISA's drafters. *See Russell*, 473 U.S. at 147, 105 S.Ct. at 3093. I would adhere to the Supreme Court's admonitions that "where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it. The presumption that a remedy was deliberately omitted from a statute is strongest when Congress has enacted a comprehensive legislative scheme including an integrated system of procedures for enforcement." *Id.* (citations omitted).

Neither do I find persuasive the plaintiffs' argument that a single sentence of dicta authored by Justice O'Connor in *Ingersoll–Rand Company v. McClendon*, — U.S. ——, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990), authorizes extra-contractual damages as a remedy under ERISA. I agree with those courts that find that "[s]uch a departure from precedent likely would not have been accomplished in a single sentence, in *dicta*, at the close of an opinion focused exclusively on a wholly different issue." *Gaskell v. Harvard Co-operative Soc'y*, 762 F.Supp. 1539, 1544 (D.Mass.1991) (emphasis in original). Indeed, given that Russell has been a cornerstone of the ever-growing jurisprudence barring extra-contractual damages under ERISA, it seems to me highly unlikely that the Supreme Court would reverse its course without so much as an attempt to distinguish or explain *Russell*. If the Court is intending to modify the state of

the law in this area, it is doing so in a surprisingly murky manner.