**INTERNATIONAL ASSOCIATION OF HEAT AND FROST INSULATORS LOCAL 17 PENSION FUND, Terry Lynch, Ted Corbett, David Rook and Richard O'Heir, Trustees of the Pension Fund, Plaintiffs,**

v.

**AMERICAN NATIONAL BANK AND TRUST COMPANY OF CHICAGO, Defendant.**

No. 95 C 6236.

United States District Court, N.D. Illinois, Eastern Division.

July 15, 1998.

multimillion dollar liability stream. Such portfolios structure fixed-income assets to pay off maturing liability as they arise. The actuarial aspects of administration of the portfolio did not run very smoothly, and there are disputes about who said or implied or inferred certain things. This does not matter here because the Bank and the Fund agree that the Bank is not an ERISA fiduciary with respect to its actuarial decisions. It is a fiduciary with respect to investment decisions. It is also agreed that when the Bank ceased portfolio management, the present value of the future liabilities was roughly a million dollars higher than the value of the assets. The Fund claims imprudent management of the portfolio and the Bank denies this.

There are two dispositive motions before me.

### 1. Motion to Strike Claims

The Bank says that the Fund is not entitled to lost opportunity cost damages or to punitive damages. It is undisputed that if a member of Local 17 were suing the Fund for wrongfully and maliciously refusing benefits there would be no right to either form of damages. Lost opportunity costs are extracontractual damages which along with punitive damages are unavailable under ERISA. So says *Massachusetts Mutual Life Insurance Co. v. Russell,* 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985), and *Harsch v. Eisenberg,* 956 F.2d 651 (7th Cir.1992). *See also Mertens v. Hewitt Associates,* 508 U.S. 248, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993).

Is the rule different when the Fund sues its fiduciaries like the Bank which managed its money? When the Fund sues the Bank it stands, in some sense, in the shoes of the beneficiaries. Why would its remedies be greater than those of the beneficiaries? One answer is that to allow a beneficiary to get punitive damages from a Fund might adversely impact other beneficiaries. On the other hand, funds usually pay professional fiduciaries, and the cost of hiring them will increase if fiduciaries must insure against risks of extra contractual damages and punitive damages. I would suppose, in the end, the Funds pay the costs of such damages.

Raymond Eugene Stachnik, Matthew Patrick Connelly, Connelly & Schroeder, Chicago, IL, for Plaintiffs.

Lynn Adrian Goldstein, Julie A. Lepri, Mary Streckert Binder, First National Bank of Chicago, Chicago, IL, for Defendant.

## MEMORANDUM OPINION AND ORDER

ZAGEL, District Judge.

Simply stated, the plaintiffs, trustees of a union pension fund ("Fund") contracted with the defendant ("Bank") to perform actuarial and portfolio management services for a dedicated bond portfolio to be used to pay a

All of this policy is interesting but irrelevant to my decision. I read *Mertens v. Hewitt Associates* to say that Congress resolved policy questions and sets forth clear rules and circumscribed remedies. There is no way to include lost opportunity costs or punitive damages with the general equitable relief the statute provides. The Fund could sue for losses but losses means the loss of money or an investment. *See DeBruyne v. Equitable Life Assur. Soc. Of U.S.*, 920 F.2d 457, 465 (7th Cir.1990) and lost opportunity cost is not loss of money in the context of ERISA. *See Mira v. Nuclear Measurements Corp.*, 107 F.3d 466, 472 (7th Cir.1997).

I grant the motion to strike.

### 2. Motion for Summary Judgment.

The material facts are not in dispute. There is a motion to strike portions of the Bank's Rule 12M statement. I deny the motion. The various documents objected to as hearsay or unauthenticated records are adequately authenticated. The documents are business record statements of parties and seem to be consistent with the business relationship as recounted by both sides to the dispute. Indeed the Fund objects only to admissibility (which it is entitled to do), it does not dispute accuracy.

The Bank accepts, for purposes of this motion, the proposition of the Fund's expert Joseph Gorman, that the Bank's portfolio management produced a shortfall of $1,087,-000 over the period April 22, 1991 to May 31, 1995. It did so by failing to follow, as its Bank intended, an effective immunization process (as opposed to a cash matching process). Then, after the passage of time, the Bank switched to a cash matching process which it also did badly. Mr. Gorman concludes that the Bank's personnel had neither the training nor experience to manage a dedicated portfolio.

■ Assuming the truth of all this, the Bank argues that it did not lose the Fund's money. The Bank means by this (in the context of this motion) that the value of the portfolio assets met an appropriate benchmark.[1] Stated in the boldest fashion, the Bank would say that incompetent fund managers are not liable if, by blind luck or sorcery, they met an objectively prudent benchmark return on investment. *In re Unisys Sav. Plan Litigation*, 74 F.3d 420 (3rd Cir. 1996). Justice (then Judge) Scalia said much the same in dissent in a different context. *See Fink v. Nat'l Sav. And Trust Co.*, 772 F.2d 951, 962 (D.C.Cir.1985) (concurring and dissenting).

The reason the benchmark is appropriate, says the Bank, is that it is the benchmark set by the Fund. In the Fund's statement of investment policy and guidelines, it said the total rate of return ought to exceed the return on the Lehman Brothers Government/Corporate Bond Index. During the period in question here that return was 8.35%. The return on the Lehman Index for Long Term Government bonds was 9.99%. The return on the Fund's portfolio was 10.07%. No doubt, says the Bank, other publicly traded funds may have done better than 10.07%, but the standard of performance cannot be judged by the highest return. Nor, says the Bank, can it be judged by hindsight. An expert like Gorman will be able to find errors in the management of any portfolio after the fact.

■ A benchmark is an appropriate way to judge prudent performance even if it was blind luck that enabled the portfolio to hit the mark. Cf. *Brock v. Robbins*, 830 F.2d 640, 646–47 (7th Cir.1987).

One could argue that acts of demonstrated incompetence by a portfolio manager ought to permit a fund to sue for money even when the return meets a benchmark. There is no authority for this proposition, and the Fund does not argue that this ought to be the rule. In the abstract, there may be something morally attractive in the proposition that an incompetent investment advisor ought not to be protected because fate saved him from his

---

1. The Bank does not concede that this is a minimum standard. Another argument they offer is that no loss of capital is no loss. The Bank says the Fund is not seeking to recover losses but to recover profits. This, the Bank says, cannot be done unless the Bank engaged in self-dealing which is not alleged to have occurred here. *See Brock v. Robbins*, 830 F.2d 640 (7th Cir.1987), *Mira v. Nuclear Measurements Corp.*, 107 F.3d 466, 473 (7th Cir.1997).

own incompetence. But some (including myself) would doubt the moral attractiveness of the proposition. *See Milner v. Apfel*, 148 F.3d 812 (7th Cir.1998) (describing the implicit acceptance of "moral luck principles" in legislative decisionmaking). And there remains the problem of picking the higher standard to which the incompetent but lucky manager must meet. Do you add 2% to the benchmark or more or less? What if the manager meets even that standard?

Picking the benchmark may be difficult to do. Funds usually hire experts to recommend one or more. At this stage, the Bank offers no expert evidence on the question of the appropriate benchmark as apparently occurred in *DeBruyne*, 920 F.2d at 465 and *Liss v. Smith*, 991 F.Supp. 278 (S.D.N.Y. 1998). It is enough, the Bank says, that the Fund picked the benchmark. I think this is correct on two separate grounds.

First, there is no reason to doubt the competence of the Fund's trustees to set an appropriate benchmark. *See In re Unisys Sav. Plan Litig.*, 1997 WL 732473, 1997 U.S. Dist., Lexis 19198 (E.D.Pa.) They did and they knew that the Bank would use that benchmark. Gorman does not say that the Lehman benchmark is inappropriate. His report can be read to say, at most, that there are better or wiser benchmarks which might not have been met.

Second, even if the benchmark is not appropriate, the Fund which set it and knew the Bank would use it ought not be able to seek damages for the Bank's use of the benchmark.

The Fund cannot make a case of imprudence. I doubt they even make a case for loss.

I grant the Bank's summary judgment motion.