**Vivion McRAE and Paulette McRae, Plaintiffs–Appellees,**

v.

**SEAFARERS' WELFARE PLAN, Defendant–Appellant.**

**No. 90–7011.**

United States Court of Appeals, Eleventh Circuit.

Jan. 7, 1991.

As Amended March 11, 1991.

---

820

John C. Falkenberry, Birmingham, Ala., for defendant-appellant.

J. Burruss Riis, Hand, Arendall, Bedsole, Greaves & Johnston, Mobile, Ala., for plaintiffs-appellees.

Before EDMONDSON and COX, Circuit Judges and WISDOM *, Senior Circuit Judge.

WISDOM, Senior Circuit Judge:

This case raises an important question, under the Employee Retirement Income Security Act, ERISA:[1] May a plaintiff recover extra-contractual damages under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).[2]

Vivion McRae and his wife Paulette were insured beneficiaries of a multi-employer employee benefit insurance plan known as Seafarer's Welfare Plan ["the Plan"]. The McRaes filed suit to compel the Plan to pay certain medical expenses incurred by the McRaes as a result of Mrs. McRae obtaining a tubal reanastomosis.[3] The McRaes also sued for compensatory and consequential damages for emotional distress, embarrassment, humiliation, and damages to their financial reputation.

The district court entered a judgment directing the Plan to pay the McRaes' medical bills and awarded the McRaes $50,000 in extra-contractual damages. 726 F.Supp. 817. The Plan has not appealed the judgment insofar as it requires payment of the medical bills; the Plan does challenge the award of extra-contractual relief.[4]

■ When there is a question as to whether the district court is mistaken on a controlling principle of law, this Court does not apply the clearly erroneous standard of Fed.R.Civ.P. 52(a) in reviewing its factual determinations. *See First Alabama Bank, N.A. v. First State Ins. Co.*, 899 F.2d 1045, 1057 n. 6 (11th Cir.1990); *Henson v. City of Dundee*, 682 F.2d 897, 906 (11th Cir. 1982). The weight of authority in both the Eleventh Circuit and other courts indicates that extra-contractual damages are not available as a form of relief under ERISA § 502(a)(3). We follow this authoritative precedent and REVERSE the district court's award of extra-contractual damages.

---

* Honorable John Minor Wisdom, Senior Circuit Judge for the Fifth Circuit, sitting by designation.

1. Pub.L. 93–406, 88 Stat. 829 (1974).

2. ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) provides:

 (a) ... A civil action may be brought— ...
 (3) by a participant, beneficiary, or fiduciary ...
 (B) to obtain other appropriate equitable relief

 (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan; ...

3. A tubal reanastomosis is the reversal of a previous surgical sterilization.

4. The extracontractual damages referred to in this opinion do not include any medical expenses.

## I. STATEMENT OF FACTS

In 1986, Paulette McRae consulted Dr. William Urquhart about obtaining a tubal reanastomosis. In the presence of the McRaes, Dr. Urquhart's insurance clerk called the toll free number of the Seafarer's Plan to inquire whether such an operation would be covered and was informed that the plan would pay 80% of the cost of such operation. In reliance on this assertion, the operation was performed, and several bills were submitted to and paid by the Plan.

After a team of medical auditors reviewed these payments, they determined that a tubal reanastomosis was not covered by the Plan, on the theory that it constitutes elective surgery which is denied coverage within the Plan document. The Plan requested reimbursement from the hospital and the anesthesia provider whom it had already paid, and the Plan refused to pay Dr. Urquhart's final bill.

The total amount of bills for which the McRae's became liable because of the Plan's determination of lack of coverage was $6,340.69. The McRaes were unable to pay these bills, and, as a result, they were denied credit and subjected to pressure from collection agencies.

The McRaes claim that this is an appropriate case for the award of extra-contractual damages to an ERISA Plan beneficiary under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).[5]

## II. DISCUSSION

█ We hold that extra-contractual damages are not available under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).[6]

ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) provides:

(a) ... A civil action may be brought—

...

(3) by a participant, beneficiary, or fiduciary ...

(B) to obtain other appropriate *equitable relief*

(i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan; ... (emphasis added).

Although the United States Supreme Court has not conclusively spoken on the issue of whether ERISA § 502(a)(3) encompasses extra-contractual or punitive damages, it has provided the framework and the guidelines for us to use in making this decision.[7] In *Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985), the Court held that ERISA § 409(a) did not authorize extra-contractual or punitive damages. Section 409(a) provides that a fiduciary who

---

5. The McRaes may be entitled to attorneys' fees under ERISA § 502(g), 29 U.S.C. 1132(g)(2). *See also Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 147, 105 S.Ct. 3085, 3092–93, 87 L.Ed.2d 96 (1985) which states that "in answer to a possible concern that attorney's fees might present a barrier to maintenance of suits for small claims, thereby risking underenforcement of beneficiaries' statutory rights, it should be noted that ERISA authorizes the award of attorney's fees." The question of whether attorneys' fees are appropriate in this case is the subject of another suit.

6. To prevent confusion between ERISA citations and the statutory numbers, reference will be made to the ERISA citations.

7. We find that our holding in this case does not conflict with the recent Supreme Court decision in *Ingersoll–Rand Co. v. McClendon*, —— U.S. ——, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990). In

*Ingersoll–Rand*, the Supreme Court stated: "Not only is § 502(a) the exclusive remedy for vindicating § 510 protected rights, there is no basis in § 502(a)'s language for limiting ERISA actions to only those which seek 'pension benefits.' It is clear that the relief requested here is well within the power of federal courts to provide." —— U.S. at ——, 111 S.Ct. at 486, 112 L.Ed.2d at 488. We do not interpret these statements to mean that the remedies which the plaintiff in *Ingersoll–Rand* was seeking—future lost wages, mental anguish and punitive damages—are necessarily available under ERISA § 502(a). The Supreme Court was stating that federal law provides relief for ERISA actions other than those that seek to recover pension benefits, such as the plaintiff's cause of action for wrongful termination. The Supreme Court is not holding that the specific *remedies* this plaintiff had sought under state law are necessarily the remedies that will be afforded him should he be granted *relief* under ERISA § 502.

breaches any of his responsibilities "shall be subject to such other equitable or remedial relief as the court may deem appropriate...." Although this language is almost identical to the remedial language provided in ERISA § 502(a)(3), because the respondent "relie[d] entirely on § 409(a), and expressly disclaim[ed] reliance on § 502(a)(3)," the Court said that it had "no occasion to consider whether any other provision of ERISA authorizes recovery of extra-contractual damages." *Russell*, 473 U.S. at 139 n. 5, 105 S.Ct. at 3088 n. 5. In dictum, however, the Court seemed to extend its reasoning to the civil enforcement system of ERISA § 502 stating: "[t]he six carefully integrated civil enforcement provisions found in § 502(a) ... provide strong evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly." *Id.* at 146, 105 S.Ct. at 3092.[8]

The Eleventh Circuit has extended the Supreme Court's reasoning in *Russell*, holding that the statutory limitation of remedies available under ERISA § 502(a)(3) to those of an equitable nature precludes extra-contractual remedies, which are legal in nature. *See Bishop v. Osborn Transp., Inc.*, 838 F.2d 1173, 1174 (11th Cir.1988), *cert. denied*, 488 U.S. 832, 109 S.Ct. 90, 102 L.Ed.2d 66 (1988). *See also Amos v. Blue Cross–Blue Shield of Alabama*, 868 F.2d 430, 431 n. 2 (11th Cir.1989), *cert. denied*, — U.S. —, 110 S.Ct. 158, 107 L.Ed.2d 116 (1989); *United Steelworkers of America, etc. v. Connors Steel Co.*, 855 F.2d 1499, 1509 (11th Cir. 1988), *cert. denied*, 489 U.S. 1096, 109 S.Ct. 1568, 103 L.Ed.2d 935 (1989). Other circuits have reached the same conclusion.[9]

The McRaes urge that they are entitled to extra-contractual damages under a federal common law claim against the Plan for misrepresentation and bad faith. In support of this, the appellees cite a 1988 Report by the House Education and Labor Committee, later adopted by the House Committee on the Budget, attacking the Supreme Court's refusal to formulate federal substantive law regarding ERISA remedies in *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). The Report states:

> The Committee believes that the legislative history of ERISA and subsequent expansions of ERISA support the view that Congress intended for the courts to develop a Federal common law with respect to employee benefit plans, including the development of appropriate remedies, even if they are not specifically enumerated in section 502 of ERISA. Since the issue of preemption in civil remedies under ERISA is within the exclusive purview of the labor committees of Congress, the Committee has, over the years, considered the option of amending the statute to encompass specifically several additional remedies. In light of the legislative history on this issue, however, the Committee believes such action is unnecessary. The Committee reaffirms the authority of the Federal courts to shape legal and equitable remedies to fit the facts and circumstances of the cases before them, even though those remedies may not be specifically mentioned in ERISA itself. In cases in which, for instance, facts and circumstances show that the processing of legitimate benefit claims has been unreasonably delayed or totally disregarded by an insurer, an employer, a plan administrator, or a plan, the Committee intends the Federal Court to develop a Federal common law of rem-

---

**8.** Justice Brennan resisted this implication in his concurrence, which was joined by Justices White, Marshall and Blackmun, writing that the majority holding leaves open the question of "whether and to what extent extra-contractual damages are available under § 502(a)(3)." *Russell*, 473 U.S. at 150, 105 S.Ct. at 3094.

**9.** *See Sokol v. Bernstein*, 803 F.2d 532, 534 (9th Cir.1986); *Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan Enterprises, Inc.*, 793 F.2d 1456, 1462–64 (5th Cir.1986), *cert. denied* 479 U.S. 1034, 107 S.Ct. 884, 93 L.Ed.2d

837, and 479 U.S. 1089, 107 S.Ct. 1298, 94 L.Ed.2d 154 (1987) and *Powell v. Chesapeake & Potomac Tel. Co.*, 780 F.2d 419, 424 (4th Cir. 1985), *cert. denied*, 476 U.S. 1170, 106 S.Ct. 2892, 90 L.Ed.2d 980 (1986); *Varhola v. Doe*, 820 F.2d 809, 817 (6th Cir.1987); *Kleinhans v. Lisle Sav. Profit Sharing Trust*, 810 F.2d 618, 626–27 (7th Cir.1987); *Dependahl v. Falstaff Brewing Corp.*, 653 F.2d 1208, 1216 (8th Cir.1981) (dictum), *cert. denied*, 454 U.S. 968, 102 S.Ct. 512, 70 L.Ed.2d 384, and 454 U.S. 1084, 102 S.Ct. 641, 70 L.Ed.2d 619 (1981).

edies, including (but certainly not limited to) the imposition of punitive damages on the person responsible for the failure to pay claims in a timely manner. Report of the Committee on the Budget, House of Representatives, 101st Congress, 1st Session, to accompany H.R. 3299, p. 55–56 (1989).

This Report carries slight weight in this case. Indeed, the existence of this Report indicates that Congress, or at least the House Education and Labor Committee, believes that there may be a need for extra-contractual and punitive damages under ERISA—yet has not acted to provide an explicit remedy. In the face of clear precedents to the contrary from the Supreme Court, the Eleventh Circuit, and other Circuits, this Court cannot create a federal common law of remedies for the benefit of the plaintiff on the sole authority of the House Committee Report.

The district court's award of extra-contractual damages is REVERSED.