**Clinton ROBERTS, By and Through his Guardian, Karen ROBERTS, and Karen Roberts, individually, Plaintiff,**

v.

**THORN APPLE VALLEY, INC., Tri-Miller Packing Co., and Miller Transport, Defendant.**

No. 90–NC–0063–S.

United States District Court,
D. Utah, N.D.

Feb. 27, 1992.

James D. Vilos, Robert B. Sykes, Salt Lake City, Utah, for plaintiff.

Gary L. Johnson, Richards, Brandt, Miller & Nelson, Salt Lake City, Utah, for defendant.

## MEMORANDUM DECISION AND ORDER

SAM, District Judge.

This matter is before the Court on defendant Thorn Apple Valley's objection to the magistrate judge's Report & Recommendation. The objection is directed at the magistrate judge's interpretation of the Supreme Court's recent decision in *Ingersoll–Rand v. McClendon,* —— U.S. ——, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990), as permitting punitive damages and jury trials in ERISA cases.

## I. *Facts*

Plaintiff, Clinton Roberts, is allegedly totally and permanently disabled due to brain injuries he sustained in an automobile accident. At the time of the accident, Mr. Roberts was employed by defendant Tri–Miller Packing Co. Defendant Thorn Apple Valley, Inc. is the administrator of Tri–Miller's employee benefit plan, which falls under ERISA. Defendants allegedly refused to pay Mr. Roberts' medical expenses on the grounds that there is no coverage under the policy for auto-related injuries. According to plaintiffs, the auto-related injury exclusion was added to the policy after the plaintiffs submitted a claim to the defendants.

Plaintiffs filed this action on July 26, 1990, seeking to recover the benefits plaintiffs allege were wrongfully denied under 29 U.S.C. § 1132 (First Cause of Action), in addition to damages stemming from defendants' alleged bad faith refusal to pay benefits (Second Cause of Action), intentional infliction of emotional distress (Third Cause of Action); and fraudulent misrepresentation (Fourth Cause of Action). Plaintiffs included a claim for $2,000,000 punitive damages and requested a jury trial.

Defendants moved to dismiss the ERISA claim (First Cause of Action) for failure to exhaust administrative remedies and sought summary judgment on the remaining claims, alleging those claims are preempted by ERISA. Defendants also allege that punitive damages and a jury trial are not available under ERISA. The case was referred to the magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(B), and a hearing on defendants' motion was held on October 17, 1990.

On October 24, 1990, the magistrate judge issued a Report & Recommendation (R & R) in which he recommended striking the jury demand, dismissing the punitive damage and bad faith claims and denying defendants' motion to stay proceedings. In an Order dated November 1, 1990, the magistrate judge withdrew the R & R, stating his intent to reconsider his recommendation in light of arguments heard in another case.

Shortly thereafter, plaintiffs formally appealed denial of the claim to the plan administrator. On February 6, 1991, the plan administrator granted benefits for some of plaintiffs' claims and denied benefits for others. As a result of that appeal, defendants' motion for summary judgment on the first cause of action became moot.

On April 22, 1991, the magistrate judge issued his follow-up Report and Recommendation (R & R) on defendants' motion to dismiss in which he recommended denying defendants' motion altogether. The magistrate judge acknowledged that, prior to *Ingersoll–Rand,* all of the lower courts had held that ERISA does not allow awards of punitive damages. However, in the concluding paragraph of *Ingersoll–Rand* the Court remarked that "[i]t is clear that the relief requested here is well within the power of federal courts to provide." *Id.* 111 S.Ct. at 486. The magistrate judge interpreted this statement as an invitation to federal courts to create federal common law remedies for bad faith denial of benefits under ERISA plans.

Defendant Thorn Apple Valley filed a timely objection to the magistrate judge's April 22, 1991 R & R. Thorn Apple Valley objects to the R & R only as it pertains to plaintiffs' claims for compensatory and punitive damages. The Court is, therefore, required to review the issues raised by the objection under the *de novo* standard of review. 28 U.S.C. § 636(b)(1)(B).

On September 26, 1991, the Court held a hearing on Thorn Apple Valley's objection to the R & R. James D. Vilos, Esq. argued on behalf of plaintiff and Gary L. Johnson, Esq. and Bradley Raymond, Esq. represented defendants. At the conclusion of the hearing, the Court dismissed the second and third causes of action and indicated its intent to supplement the ruling with a memorandum decision. The Court also requested additional briefing concerning the viability of the fourth cause of action. The supplemental briefs were filed on October 16 and 17. This Memorandum Decision and Order supplements the September 26 bench ruling and addresses the fourth cause of action.

## II. Second and Third Causes of Action

Section 502 of the Employee Retirement Income Security Act of 1974 (ERISA) states that a civil action may only be brought

> by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) *to obtain other appropriate equitable relief* (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

29 U.S.C. § 1132(a)(3) (1988) (emphasis added). Until recently, all courts that have considered whether compensatory and punitive damages are available under ERISA have determined that causes of action seeking such relief are not authorized. That changed in 1990 after the United States Supreme Court issued its ruling in *Ingersoll–Rand Co. v. McClendon*, — U.S. ——, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990), which sparked a debate as to whether ERISA does in fact authorize punitive and compensatory damages.

In *Ingersoll–Rand*, the plaintiff, McClendon, sued his former employer, Ingersoll–Rand, in state court for wrongful termination. McClendon alleged that Ingersoll–Rand fired him in an effort to avoid making contributions to his pension plan. McClendon sought compensatory and punitive damages under various contract and tort theories.

Ingersoll–Rand obtained a dismissal at the trial court level on the grounds that McClendon's employment was terminable at will. The state court of appeals affirmed. The Texas Supreme Court reversed, however, reasoning that public policy limitations prevent an employer from firing an at-will employee simply to avoid contributing to pension plans. The court also held that McClendon's claims were not preempted by ERISA because he was *"not* seeking lost *pension benefits* but [was] instead seeking future lost wages, mental anguish and punitive damages as a result of the wrongful discharge." *Id.* 111 S.Ct. at 481 (quoting *McClendon v. Ingersoll–*

*Rand Co.*, 779 S.W.2d 69, 71 (Tex.1989) (emphasis in original)).

On appeal, the Supreme Court considered the preemption argument and concluded that, because ERISA superseded "any and all State laws [which] relate to any employee benefit plan", McClendon could not advance his claims in state court. The Court reasoned that a claim an employer wrongfully discharged an employee to avoid paying pension benefits " 'relate[d] to' an ERISA-covered plan within the meaning of § 514(a), and [was] therefore pre-empted." *Id.* 111 S.Ct. at 483.

The Court went on to examine the preemptive provisions of ERISA including § 502(a), the exclusive remedy provision. The Court then referred to its earlier decision in *Pilot Life Insurance Co. v. Dedeaux*, 481 U.S. 41, 107. S.Ct. 1549, 95 L.Ed.2d 39 (1987) in which it explained that "Congress intended § 502(a) to be the exclusive remedy for rights guaranteed under ERISA, including those provided by § 510." *Id.* 107 S.Ct. at 485. The Court noted that in *Pilot Life* it had held " 'The six carefully integrated civil enforcement provisions found in § 502(a) of the statute as finally enacted ... provide strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly.' " *Id.* (quoting *Pilot Life*, 481 U.S. at 54, 107 S.Ct. at 1556 (1987)).

It is against this background that the Court seeks to interpret the Supreme Court's concluding and somewhat confusing statement:

> Not only is § 502(a) the exclusive remedy for vindicating § 510–protected rights, there is no basis in § 502(a)'s language for limiting ERISA actions to only those which seek 'pension benefits.' It is clear that the relief requested here is well within the power of federal courts to provide. Consequently, it is no answer to a preemption argument that a particular plaintiff is not seeking recovery of pension benefits.

*Id.* 111 S.Ct. at 486.

The magistrate judge interpreted the Court's statement that "the relief request-

ed here is well within the power of federal courts to provide" to mean that federal courts should engage in a process of developing a body of federal common law to allow, among other things, the awarding of punitive damages in ERISA cases.

However, after many careful readings of *Ingersoll–Rand*, this Court concludes that the *Ingersoll–Rand* Court, by that language, is responding to the Texas Supreme Court's conclusion that a claim for relief for wrongful discharge does not fall under ERISA. The Texas court based that conclusion on the fact that McClendon was not seeking "pension benefits." The last paragraph of *Ingersoll–Rand* points out that "there is no basis in § 502(a)'s language for limiting ERISA actions to only those which seek 'pension benefits.'" *Id.* The Court then goes on to say that the relief requested by Mr. McClendon (relief for wrongful discharge) "is well within the power of federal courts to provide." *Id.*

 In other words, an employee who is wrongfully discharged by an employer seeking to avoid paying pension benefits may not sue under state law, but may maintain a claim under ERISA. However, the remedy available to such a plaintiff is limited by ERISA's exclusive remedy provision and thus does not allow an award of punitive *damages.*

The Eleventh Circuit reached the same conclusion in *McRae v. Seafarers' Welfare Plan,* 920 F.2d 819 (11th Cir.1991), an action by a plan beneficiary arising from the plan's denial of benefits for an operation to reverse a previous surgical sterilization. In *McRae,* the court held that extra-contractual damages are not available under ERISA and cited *Ingersoll–Rand* in a footnote stating:

> We do not interpret these statements to mean that the remedies which the plaintiff in *Ingersoll–Rand* was seeking—future lost wages, mental anguish and punitive damages—are necessarily available under ERISA § 502(a). The Supreme Court was stating that federal law provides relief for ERISA actions other than those that seek to recover pension benefits, such as the plaintiff's cause of action for wrongful termination. The Supreme Court is not holding that the specific *remedies* this plaintiff had sought under state law are necessarily the remedies that will be afforded him should he be granted *relief* under ERISA § 502.

*McRae,* 920 F.2d at 821 n. 7.[1] *See also Harsch v. Eisenberg,* 956 F.2d 651 (7th Cir.1992); *O'Neil v. GenCorp., Inc.,* 764 F.Supp. 833 (S.D.N.Y.1991).[2]

The Court agrees with the observation made by several other courts, that the Supreme Court would not overrule a considerable body of federal caselaw barring punitive and extracontractual damages under ERISA without a specific expression of such intent. *Harsch,* 956 F.2d at 659; *McRae,* 920 F.2d at 821; *Gaskell v. Harvard Cooperative Society,* 762 F.Supp. 1539, 1544 (D.Mass.1991); *O'Neil,* 764 F.Supp. at 834.

Based on the foregoing analysis, the Court concludes that plaintiffs cannot maintain the claims for which punitive damages are sought. Accordingly, plaintiffs' second and third causes of action are dismissed.

---

1. The magistrate judge rejected *McRae,* relying instead on Judge Acker's opinion in *Blue Cross and Blue Shield of Alabama v. Lewis,* 753 F.Supp. 345 (N.D.Ala.1990). The magistrate judge evidently overlooked the fact that the Northern District of Alabama is within the Eleventh Circuit and the *Blue Cross* decision was reached prior to *McRae.* Therefore, the holding in *Blue Cross,* while apparently never appealed, is effectively overruled by *McRae* and is of no precedential value.

2. The other basis for the magistrate judge's recommendation was a 1988 House Education and Labor Committee report in which the Committee indicated its belief that federal courts are supposed to develop a body of federal common law allowing the imposition of, among other things, punitive damages in ERISA cases. Reliance on the report of a legislative committee that was not involved in the drafting or enacting of the ERISA legislation is misplaced. The *McRae* court, faced with plaintiff's reliance on the same report, gave only "slight weight" to the Report. *McRae,* 920 F.2d at 823.

### III. *Fourth Cause of Action*

 Plaintiffs' fourth cause of action alleges that defendants engaged in fraudulent activities. Because claims based on state law are preempted by ERISA, plaintiffs cannot maintain the fourth cause of action based on state laws prohibiting fraud. Therefore, plaintiffs' claim is viable only if there is a federal common law cause of action for fraud. The *McRae* court, facing a similar challenge, refused to recognize federal common law causes of action for misrepresentation and bad faith in light of *Ingersoll–Rand*, despite Mr. McRae's reliance on the same House Committee Report cited at bar.

This Report carries slight weight in this case. Indeed, the existence of this Report indicates that Congress, or at least the House Education and Labor Committee, believes that there may be a need for extra-contractual and punitive damages under ERISA—yet has not acted to provide an explicit remedy. In the face of clear precedents to the contrary from the Supreme Court, the Eleventh Circuit, and other Circuits, this Court cannot create a federal common law of remedies for the benefit of the plaintiff on the sole authority of the House Committee Report.

*McRae*, 920 F.2d at 823.

Plaintiffs would have this Court be the first to recognize a federal common law claim for fraud. While courts have acknowledged Congress' admonition that courts develop a body of federal common law as they interpret and apply ERISA, *Pilot Life*, 481 U.S. at 54–56, 107 S.Ct. at 1556–58; *Anderson v. John Morrell and Co.*, 830 F.2d 872, 877 (8th Cir.1987), courts have likewise been reluctant to do so in light of the evident Congressional intent that ERISA occupy the field. *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 19, 100 S.Ct. 242, 247, 62 L.Ed.2d 146 (1979) ("[W]here a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it.").

If Roberts had based his fraud claim on state law, it would clearly be pre-empted.

The court agrees with the Fifth Circuit's analysis in *Morales v. Pan American Life Ins. Co.*, 914 F.2d 83, 87 (5th Cir.1990):

Although some of the drafters of ERISA intended federal courts to develop a federal common law to supplement the statutory scheme, we agree with the district court that creation of a federal common law of unjust enrichment and third-party beneficiary claims would be inconsistent with ERISA's terms and policies. ERISA's civil enforcement provision creates an exclusive remedial scheme focusing on the terms of the plan.

*Id.* at 87 (Footnote and citation omitted).

### IV. *Conclusion*

For the foregoing reasons, defendants' motion for summary judgment is granted. The Second, Third and Fourth causes of action are dismissed and plaintiffs' request for a jury trial is denied.