Cheryl B. ZIMMERMAN, Plaintiff,

v.

SLOSS EQUIPMENT, INC.,
et al., Defendants.

Civ. A. No. 92–2383–GTV.

United States District Court,
D. Kansas.

Sept. 28, 1993.

Memorandum Denying Reconsideration
Oct. 28, 1993.

Mark A. Buchanan, the Popham Law Firm, Kansas City, MO, for plaintiff.

William M. Modrcin, Hillix, Brewer, Hoffhaus, Whittaker & Wright, Kansas City, MO, for defendants.

## MEMORANDUM AND ORDER

VAN BEBBER, District Judge.

This case is before the court on the following motions:

1. Defendants' Motion for Summary Judgment (Doc. 42);

2. Defendants' Motion to Strike Plaintiff's Request for Punitive Damages and Damages for Intentional Infliction of Emotional Distress (Doc. 58); and

3. Defendants' Motion to Strike Plaintiff's Jury Demand (Doc. 56).

Plaintiff has responded to the motion for summary judgment (Doc. 47) and opposes the motion. The other motions have not been responded to. For the reasons stated in this memorandum and order, the motion for summary judgment is denied and the motions to strike are granted.

## I. MOTION FOR SUMMARY JUDGMENT

This case concerns claims brought by plaintiff Cheryl Zimmerman alleging that her employment was terminated by defendants Sloss Equipment and S & N Enterprises, Inc., in order to avoid paying her medical expenses as required under the terms of defendants' health insurance plan, and that the termination was thus in violation of section 510 of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1140. Plaintiff has also alleged a state law claim for breach of an employment contract. Defendants have now moved for summary judgment on all claims.

### A. Summary Judgment Standards

In deciding a motion for summary judgment, the court must examine any evidence tending to show triable issues in the light most favorable to the nonmoving party. *Bee v. Greaves*, 744 F.2d 1387, 1396 (10th Cir. 1984), *cert. denied*, 469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985). A moving party is entitled to summary judgment only if the evidence indicates "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine factual issue is one that "can reasonably be resolved only be a finder of fact because [it] may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. This burden may be discharged by "showing" that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party, who "may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514. Thus, the mere existence of some alleged factual dis-

pute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.*

### B. Factual Background

The pertinent uncontroverted facts established by the parties in accordance with D.Kan. Rule 206(c) are as follows:

Plaintiff Cheryl Zimmerman was hired by defendants Sloss Equipment, Inc., and S & N Enterprises, Inc., on August 24, 1990, as a full-time secretary/receptionist. She was an employee of both corporations and each corporation paid one-half of her salary.

Defendant Sloss Equipment is a corporation engaged in the leasing and sale of trash compaction equipment. S & N Enterprises is a corporation which owns the trash compacting equipment leased by Sloss Equipment. Richard Sloss is President, Chief Executive Officer, and sole stockholder of Sloss Equipment. S & N Enterprises is owned jointly by Richard Sloss and Chase Nixon. Nixon is President of S & N Enterprises.

S & N Enterprises purchased a group health insurance plan with Employers Health Insurance Company (Employers) through the Lockton Agency effective June 1, 1990. Donna Sherrow, Manager of Client Services for Lockton, handled the transaction. Plaintiff has testified that during her initial employment interview with defendants she was told by Chase Nixon that she would have health insurance within sixty days after employment if she worked out.[1]

On September 27, 1990, plaintiff contacted Donna Sherrow and requested that Sherrow send her an application for health coverage pursuant to the group plan. Sherrow sent plaintiff an application to fill out. Because of the size of the group plan, each applicant was required to be medically underwritten. The applicant would furnish information concerning his or her prior medical history, and based upon the information, the insurance company would determine if coverage would

be available to the applicant. Coverage was not automatically given to each employee.

On October 4, 1990, Sherrow received from plaintiff an incomplete insurance application. That same day, plaintiff called Sherrow. Sherrow told plaintiff that she had failed to answer the health questions on the application and Sherrow was mailing the application back to her.

On December 12, 1990, plaintiff called Sherrow to see if her health insurance was effective. Sherrow had never received a completed enrollment form from plaintiff. Sherrow checked with Employers to see if they had received one directly and was advised they had not. Sherrow then sent plaintiff another application to complete.

Chase Nixon was advised by plaintiff in September or October, 1990, that she was applying for health insurance. Nixon testified during a deposition that he thought plaintiff would become insured if her application was approved by Employers.

On January 10, 1991, plaintiff was admitted to Humana Hospital in Overland Park, Kansas. In middle or late January, after plaintiff was released from the hospital, she called Wallace McIntire, another employee of S & N Enterprises and Sloss Equipment, to inquire about her health insurance. McIntire contacted the Lockton Agency and learned that they had never received a completed application from plaintiff and that she had not been added to the company's insurance.

On January 28, 1991, plaintiff spoke with Chase Nixon by telephone. The parties dispute what occurred during the phone conversation, but plaintiff claims that Nixon told her that she was fired.[2] Plaintiff also asserts that in October, 1990, after plaintiff was hired by the defendants, Chase Nixon contacted Sherrow to inquire about the estimated costs of adding plaintiff to the company insurance plan. He testified that he was shocked by the $190.70 per month amount. He also testified that he wanted plaintiff to know how much her insurance cost and that

---

1. The court notes that the length of plaintiff's initial waiting period is apparently controverted by the parties.

2. For purposes of this memorandum and order, we construe this fact issue in favor plaintiff, the non-moving party.

it was a big bonus to receive insurance coverage.

According to underwriter Bruce Lund, Employers' underwriting policies in effect in September, 1990, required them to decline health insurance coverage to any applicant who had been hospitalized for alcohol abuse treatment within three years prior to submitting an application.[3] Plaintiff was treated for depression related to alcohol abuse during July, 1990, prior to her employment with defendants.

### C. Discussion

As an initial matter, the court notes that the parties have agreed that plaintiff's state law claims for breach of implied contract of employment and wrongful discharge are preempted by ERISA. Therefore, Count II of plaintiff's complaint is dismissed. Additionally, the court notes that in the Pretrial Order entered in this case the parties have agreed that individual defendant Richard Sloss may be dismissed from this action.

As to Count I of her Complaint, plaintiff alleges that she was terminated in violation of ERISA § 510, 29 U.S.C. § 1140, which provides in relevant part, that it is unlawful "for any person to discharge, fire, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of the employee benefit plan ... or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan...." In the present case, plaintiff claims that defendants terminated her employment while she was on medical leave to avoid paying her health insurance benefits.

In their motion for summary judgment, defendants contend that plaintiff cannot demonstrate any evidence of specific intent on the part of defendants to violate ERISA and that therefore plaintiff cannot establish a *prima facie* case under ERISA § 510. Plaintiff contends, on the other hand, that firing plaintiff while she was on medical leave is direct evidence of specific discriminatory intent.

She also argues that comments by Chase Nixon concerning the high cost of providing plaintiff with medical insurance, as well as defendants' failure to help plaintiff obtain her medical insurance also constitute evidence from which a specific intent to violate ERISA may be inferred. The court agrees with plaintiff.

■ To recover under ERISA § 510, a plaintiff need not prove that "the sole reason for his termination was to interfere with pension rights." *Morgan v. ANR Freight Systems, Inc.,* No. 87–2239, 1989 WL 7890 (D.Kan. Jan. 10, 1989) (*quoting, Titsch v. Reliance Group, Inc.,* 548 F.Supp. 983, 985 (S.D.N.Y.1982), *aff'd,* 742 F.2d 1441 (2d Cir. 1983)). A plaintiff, must, however, demonstrate that the defendant had the " 'specific intent' to violate ERISA." *Morgan,* 1989 WL 7890 at 4 (*quoting Watkinson v. Great Atlantic & Pacific Tea Co., Inc.,* 585 F.Supp. 879, 883 (E.D.Pa.1984)); *see also, Nixon v. Celotex Corp.,* 693 F.Supp. 547 (W.D.Mich. 1988). Under section 510, no cause of action lies where the loss of pension benefits is a mere consequence of, but not a motivating factor behind, a termination of employment. *Economu v. Borg–Warner,* 662 F.Supp. 1047 (D.Conn.1986), *aff'd,* 824 F.2d 181 (2d Cir. 1987).

■ Under the prevailing case law and in accordance with the statutory language, the essential element of proof under section 510 is specific intent to engage in proscribed activity. The obstacle that most plaintiffs face in this regard is that they rarely have the "smoking gun" to make their case. As a result, the evidentiary burden in discrimination cases may be satisfied by circumstantial evidence. *See Maxfield v. Sinclair Int'l,* 766 F.2d 788, 791 (3d Cir.1985), *cert. denied,* 474 U.S. 1057, 106 S.Ct. 796, 88 L.Ed.2d 773 (1986). Where a plaintiff relies upon circumstantial evidence to prove his or her case the courts have developed "formula[s] ... that enable[ ] the trial judge to sift through the evidence in an orderly fashion to determine the ultimate question in the case—did the

---

**3.** Plaintiff contends this is a controverted fact. It is included in this memorandum and order only for purposes of discussing defendant's argument, and is not relied upon by the court as an uncontroverted fact.

defendant intentionally discriminate against the plaintiff." *Dillon v. Coles,* 746 F.2d 998, 1003 (3d Cir.1984).

 In ERISA cases, as in Title VII cases, the courts have placed upon the plaintiff the burden of establishing a *prima facie* case of discrimination. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *see also, Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253–54, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981). To establish a *prima facie* case under ERISA § 510 the employee must demonstrate (1) prohibited employer conduct (2) taken for the purpose of interfering (3) with the attainment of any right to which the employee may become entitled. *Morgan,* 1989 WL 7890 at 4 (*quoting Gavalik v. Continental Can Co.,* 812 F.2d 834, 851–52 (3d Cir.), *cert. denied,* 484 U.S. 979, 108 S.Ct. 495, 98 L.Ed.2d 492 (1987)). At issue in the motion presently before the court is the defendant employers' specific intent. Plaintiff must make a showing sufficient to establish that a genuine issue exists as to defendant's specific intent to interfere with any right to which she might have been entitled in order to withstand summary judgment. *See McGann v. H & H Music Co.,* 946 F.2d 401, 404 (5th Cir.1991), *cert. denied,* —— U.S. ——, 113 S.Ct. 482, 121 L.Ed.2d 387 (1992).

██ Plaintiff argues that Chase Nixon, an owner and employee of the defendant corporations, terminated her employment while she was on medical leave and that the timing of the alleged termination constitutes direct evidence of the specific discriminatory intent necessary to establish a *prima facie* case under ERISA § 510. In *Folz v. Marriott Corp.,* 594 F.Supp. 1007, 1014 (W.D.Mo.1984), the court reviewed the evidence presented by both parties and inferred an illegal motive from the timing of the plaintiff's discharge. In that case, the plaintiff who claimed he was discharged for the purpose of depriving him of continued participation in the employer's company-provided insurance plan was fired approximately two months after he notified

his supervisor that he had multiple sclerosis. *Id.*

Similarly, in *Humphreys v. Bellaire Corp.,* the Court of Appeals for the Sixth Circuit held that discharging an employee within two months of the point when his pension benefits would vest satisfied the "low threshold" of a *prima facie* case. The court wrote that "proximity to vesting provides at least some inference of intentional, prohibited activity. *Humphreys v. Bellaire Corp.,* 966 F.2d 1037, 1043–44 (6th Cir.1992) (citing *Biggins v. Hazen Paper Co.,* 953 F.2d 1405, 1416 (1st Cir. 1992)). In the present case, the court concludes that firing plaintiff while on medical leave and while her health insurance application was pending raises the same inference.

In addition, plaintiff claims that specific intent is shown in the deposition testimony of Chase Nixon. Plaintiff alleges that Nixon testified that after learning that plaintiff submitted her health insurance application, he called the Lockton Agency to determine what her policy would cost the company. Nixon testified that he was "shocked" to learn the amount would be approximately $200.00 per month. He referred to plaintiff's health insurance benefits as "a big bonus." Such statements also constitute circumstantial evidence from which the court may infer a specific intent to discriminate existed on the part of defendants.

The court concludes, therefore, that plaintiff has come forward with evidence at least sufficient to establish that a genuine issue exists as to defendants' specific intent. Summary judgment must be denied on this issue.[4]

In addition to their argument regarding plaintiff's lack of evidence concerning a specific intent to discriminate, defendants argue that plaintiff's ERISA claim must fail because there is no causal link between the claimed actions of the defendants and plaintiff's not having obtained health care insurance. Defendants argue that it was not the termination that led to plaintiff's lack of insurance. Rather, defendants contend that

---

4. Because the parties dispute whether plaintiff was actually terminated during the conversation with Chase Nixon, the court does not continue

the *McDonnell Douglas—Burdine* shifting burdens analysis in this memorandum and order.

plaintiff had no health care coverage because: (1) she failed to properly fill out her health insurance applications, and (2) she would not have been eligible anyway because of her prior hospitalization for alcohol abuse.

■ It appears to the court that defendants misconstrue the nature of "causation" as applied to a claim brought under ERISA § 510. Defendants attempt to argue that there is no causal connection between their alleged conduct and plaintiff's failure to obtain health insurance because she was not enrolled in the health plan at the time of her termination, allegedly through her own neglect. In *Zipf v. American Tel. & Tel. Co.*, the Court of Appeals for the Third Circuit noted that:

> Section 510 itself indicates that the employee need not show that "but for" the unlawful interference, the employee would have been entitled to benefits. The statutory language forbids conduct taken for "the purpose of interfering with the attainment of any right to which such participant *may* become entitled," regardless of whether the interference is successful and regardless of whether the participant would actually have received the benefits absent the interference.

*Zipf v. American Tel. & Tel. Co.*, 799 F.2d 889, 893 (3rd Cir.1986). Plaintiff need only establish that at the time of the alleged violation she had the potential of receiving health insurance benefits and that defendants took some action with the specific intent to keep her from obtaining the benefits. *Id. See also Gavalik*, 812 F.2d at 851–52. She need not establish that the termination was the actual cause of her lack of health insurance. Summary judgment cannot be granted for defendants on the issue of causation.

■ Finally, defendants have argued that summary judgment is appropriate on plaintiff's ERISA claim because she has not suffered any compensable damages as a result of defendants' actions. Plaintiff has claimed damages for medical bills, back pay, front pay, emotional distress, and attorney fees. Defendants' arguments regarding plaintiff's alleged inability to prove damages concern only her medical bills, which were apparently paid by the State of Kansas rather than plaintiff herself. The court has the equitable power to award damages beyond the mere reinstatement of benefits. The court may award damages such as back pay, reinstatement, restitution of forfeited benefits, and other relief necessary to make plaintiff whole. *Folz*, 594 F.Supp. at 1016 (citing *Bittner v. Sadoff*, 490 F.Supp. 534, 536 (E.D.Wis.1980)). The court concludes that summary judgment is not appropriate in light of its equitable power to award damages.

## II. MOTION TO STRIKE DEMAND FOR PUNITIVE DAMAGES AND MOTION TO STRIKE JURY DEMAND

Defendants have moved for an order striking plaintiff's request for punitive damages and damages for intentional infliction of emotional distress. Defendants contend that punitive damages are not allowed in actions brought under ERISA. Additionally, defendants contend that plaintiff's claim for emotional distress is preempted by ERISA. Additionally, defendants have moved for an order striking plaintiff's demand for a jury trial, arguing that plaintiff is not entitled to trial by jury in an action for the recovery of ERISA benefits. Plaintiff has not filed a response to the motions, and the time for doing so has expired.

When a party neglects to respond to a motion, the motion will be considered and decided as an uncontested motion and may be granted without further notice. D.Kan. Rule 206(g). For that reason and the reasons well-stated in the motions, these motions are granted.

IT IS, THEREFORE, BY THE COURT ORDERED that Defendants' Motion for Summary Judgment (Doc. 42) is denied.

IT IS FURTHER ORDERED that Defendants' Motion to Strike Plaintiff's Request for Punitive Damages and Damages for Intentional Infliction of Emotional Distress (Doc. 58) is granted.

IT IS FURTHER ORDERED that Defendants' Motion to Strike Plaintiff's Jury Demand (Doc. 56) is granted.

Copies of this order shall be mailed to counsel of record for the parties.

**IT IS SO ORDERED.**

### MEMORANDUM AND ORDER ON RECONSIDERATION

This case is before the court on Plaintiff's Motion for Reconsideration (Doc. 68) of the court's order dated September 28, 1993, 835 F.Supp. 1283. In that order, the court granted defendants' motion to strike plaintiff's request for punitive damages and damages for emotional distress, and defendants' motion to strike plaintiff's jury demand. Defendants have responded and oppose the motion for reconsideration. For the reasons stated in this memorandum and order, the motion is denied.

■ Whether to grant or deny a motion for reconsideration is committed to the court's discretion. *Hancock v. City of Oklahoma City,* 857 F.2d 1394, 1395 (10th Cir. 1988). In exercising that discretion, courts in general have recognized three major grounds justifying reconsideration: (1) an intervening change in controlling law; (2) availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice. *Estate of Pidcock v. Sunnyland America, Inc.,* 726 F.Supp. 1322, 1333 (S.D.Ga.1989); *see Major v. Benton,* 647 F.2d 110, 112 (10th Cir.1981).

The order in question was granted by the court as unopposed because the plaintiff had not responded to the motion to strike. Plaintiff's counsel claims that it did not receive a copy of the motion and thus did not respond. In the interest of fairness, the court will now address the merits of defendants' motions to strike.

### A. Motion to Strike Plaintiff's Request for Punitive Damages and Damages for Emotional Distress

■ This case concerns claims brought by plaintiff alleging that her employment was terminated by defendants in order to avoid paying her medical expenses as required under the terms of defendants' health insurance plan, and that the termination was thus in violation of Section 510 of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1140. The remedies for a violation of ERISA § 510 are those set forth in ERISA § 502(a)(1)(B) and (a)(3), 29 U.S.C. § 1132(a)(1)(B) and (a)(3).

In their motion to strike plaintiff's request for punitive damages and damages for emotional distress, defendants argue that such damages are not available in an ERISA action under Section 510. In support of their contention, defendants have cited the cases of *Sage v. Automation, Inc. Pension Plan and Trust,* 845 F.2d 885, 888 n. 2 (10th Cir.1988) (punitive damages), and *Lawford v. New York Life Ins. Co.,* 739 F.Supp. 906 (S.D.N.Y.1990) (emotional distress damages). In *Sage,* the Court of Appeals for the Tenth Circuit made the blanket statement that punitive damages are not available in an ERISA action. 845 F.2d at 888 n. 2.

In her Motion for Reconsideration, plaintiff now argues that the Supreme Court's opinion in *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990), stands for the proposition that it is within the power of the federal courts to award damages such as future lost wages, mental anguish and punitive damages. *Id.* at 145, 111 S.Ct. at 486. Plaintiff contends that opinions of district and circuit courts which preceded the *Ingersoll–Rand* decision and held that such damages were not available under ERISA have been superseded.

Prior to *Ingersoll–Rand,* every circuit court that had addressed the issue held that punitive damages are not recoverable under ERISA § 502(a)(3). *Harsch v. Eisenberg,* 956 F.2d 651, 661 (7th Cir.) (citing *Kleinhans v. Lisle Savings Profit Sharing Trust,* 810 F.2d 618, 627 (7th Cir.1987), *cert. denied,* —— U.S. ——, 113 S.Ct. 61, 121 L.Ed.2d 29 (1992); *Amos v. Blue Cross–Blue Shield,* 868 F.2d 430 (11th Cir.), *cert. denied,* 493 U.S. 855, 110 S.Ct. 158, 107 L.Ed.2d 116 (1989); *Pane v. RCA Corp.,* 868 F.2d 631 (3rd Cir. 1989); *Drinkwater v. Metropolitan Life Ins. Co.,* 846 F.2d 821 (6th Cir.1988); *Varhola v. Doe,* 820 F.2d 809 (6th Cir.1987); *Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan Enterprises, Inc.,* 793 F.2d 1456 (5th Cir.1986); *Sokol v. Bernstein,* 803 F.2d 532 (9th Cir.1986); *Powell v. Chesa-*

*peake & Potomac Tel. Co.*, 780 F.2d 419 (4th Cir.1985), *cert. denied,* 476 U.S. 1170, 106 S.Ct. 2892, 90 L.Ed.2d 980 (1986). These and other decisions holding that extra-contractual damages were not available under ERISA § 502(a)(3) grew out of the Supreme Court's holding in *Massachusetts Mutual Like Ins. Co. v. Russell,* 473 U.S. 134, 136, 105 S.Ct. 3085, 3087, 87 L.Ed.2d 96 (1985), that "extracontractual damages caused by improper or untimely processing of benefits claims" were not recoverable in an action brought by a beneficiary under ERISA § 409(a), 29 U.S.C. § 1109(a).

The *Ingersoll–Rand* decision has been widely discussed by lower courts since it was handed down in 1990. The primary issue in *Ingersoll–Rand* was not what types of damages were available in ERISA actions, but whether or not ERISA preempted a state law claim that an employee was unlawfully discharged to prevent his or her attainment of benefits under an ERISA-covered plan. 498 U.S. at 135, 111 S.Ct. at 481. In dicta, however, the Court stated that "there is no basis in § 502(a)'s language for limiting ERISA actions to only those which seek 'pension benefits.' It is clear that the relief requested [in this case] is well within the power of federal courts to provide." *Id.,* 498 U.S. at 145, 111 S.Ct. at 486. Earlier in the opinion, the Court had noted that plaintiff McClendon was not seeking to recover lost pension benefits in his state law claim, but was seeking future wages, mental anguish and punitive damages based upon his alleged wrongful discharge. *Id.* at 136, 111 S.Ct. at 481.

Since the *Ingersoll–Rand* opinion, several district courts have interpreted the Court's statement regarding "the relief requested" to mean that punitive damages, damages for emotional distress, compensatory damages, and other types of extracontractual damages are available under ERISA. *See e.g., Blue Cross and Blue Shield of Alabama v. Lewis,* 753 F.Supp. 345, 347 (N.D.Ala.1990); *see also International Union, United Automobile, Aerospace and Agricultural Implement Workers v. Midland Steel Prods. Co.,* 771 F.Supp. 860, 863 (N.D.Ohio 1991). However, other district courts and the two circuit

courts that have addressed the issue post-*Ingersoll–Rand* have interpreted the dicta less expansively. *See Harsch v. Eisenberg,* 956 F.2d 651, 660 (7th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 61, 121 L.Ed.2d 29 (1992); *McRae v. Seafarers' Welfare Plan,* 920 F.2d 819, 821 (11th Cir.1991); *Roberts v. Thorn Apple Valley, Inc.,* 784 F.Supp. 1538, 1541 (D.Utah 1992); *O'Neil v. Gencorp, Inc.,* 764 F.Supp. 833, 834 (S.D.N.Y.1991); *Gaskell v. Harvard Coop. Society,* 762 F.Supp. 1539, 1544 (D.Mass.1991), *vacated on other grounds,* 3 F.3d 495 (1st Cir.1993).

The courts in *Harsch, McRae, Roberts,* and *Gaskell* all commented that the Supreme Court surely could not have intended to overrule settled law in most circuits in such an offhand manner. *E.g., Harsch,* 956 F.2d at 660. Rather, the court in *McRae* interpreted the *Ingersoll–Rand* dicta as follows:

> The Supreme Court was stating that federal law provides relief for ERISA actions other than those that seek to recover pension benefits, such as the plaintiff's cause of action for wrongful termination. The Supreme Court is not holding that the specific *remedies* this plaintiff had sought under state law are necessarily the remedies that will be afforded him should he be granted *relief* under ERISA § 502.

920 F.2d at 821.

This court agrees with the conclusion reached by the *Harsch, McRae, Roberts,* and *Gaskell* courts that the dicta in *Ingersoll–Rand* should not be interpreted so expansively as to overturn the well-established line of cases holding that extracontractual damages were not available under ERISA § 502.

The decision in *Roberts* is especially persuasive to the court. In *Roberts,* Judge Sam of the District of Utah addressed a situation factually similar to the case at hand where a plaintiff alleged he had been wrongfully denied health insurance benefits in violation of ERISA § 510. 784 F.Supp. at 1539. Defendants contended that punitive damages and a jury trial were not available under ERISA. *Id.* Judge Sam specifically interpreted *Ingersoll–Rand* to mean that:

> an employee who is wrongfully discharged by an employer seeking to avoid paying pension benefits may not sue under state

law, but may maintain a claim under ERISA. However, the remedy available to such a plaintiff is limited by ERISA's exclusive remedy provision and thus does not allow an award of punitive damages. *Id.* at 1541.

This court agrees with Judge Sam's interpretation of *Ingersoll–Rand*, as well as the interpretation advanced by the *McRae* court. Based upon the opinions cited in the foregoing paragraphs, the court concludes that the better interpretation of the *Ingersoll–Rand* dicta is that articulated by the *Roberts* and *McRae* courts. Thus, the court concludes that its previous order striking plaintiff's request for punitive damages and damages for emotional distress should not be reconsidered.

Although the court has not found any post-*Ingersoll–Rand* decisions expressly discussing the availability of damages for emotional distress, the court concludes that such damages are also unavailable under ERISA. Pre–*Ingersoll–Rand*, courts clearly held that they were not available. *See Ragan v. Navistar Int'l Trans. Corp.*, No. 88–2623, 1989 WL 117486, at *1 (D.Kan. Sept. 20, 1989) (citing *Sokol v. Bernstein*, 803 F.2d 532, 534–38 (9th Cir.1986)).

## B. Right to Jury Trial

In her motion for reconsideration, plaintiff also argues that because the dicta in *Ingersoll–Rand* gives courts the "green light" to award legal remedies, a right to a jury trial in ERISA actions must exist. Whether a right to jury trial exists in actions for violation of ERISA § 510 is an unsettled area of law. Neither the Tenth Circuit nor the Supreme Court has ruled on this issue. The court concludes, however, that based upon the weight of authority and the type of damages sought the right to a jury trial does not exist in this case.

To determine whether a right to trial by jury exists in a particular case, the court must make a two-part inquiry. First, the court must determine whether the statute under which the claim is brought provides for a right to trial by jury. Second, the court must examine whether a jury trial is required by the Seventh Amendment of the Constitution.

ERISA § 510 is silent on the issue of trial by jury. Similarly, ERISA § 502(a), which is the exclusive enforcement vehicle for claims based on violations of Section 510, is also silent on the jury trial issue. The court must base its decision on whether plaintiff's Section 510 action is equitable or legal in nature.

"The clear weight of authority is against allowing jury trials in ERISA matters. Eight federal circuit courts have ruled that jury trials under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), are not required by the Seventh Amendment because the remedy provided is equitable in nature." *Steeples v. Time Ins. Co.*, 139 F.R.D. 688, 689 (N.D.Okla.1991) (numerous citations omitted) (court ultimately held that a jury trial should be available). Similarly, courts have noted that language in Section 503(a)(3) providing for equitable relief creates no right to a jury trial. *Pickering v. USX Corp.*, 809 F.Supp. 1501, 1509 (D.Utah 1992) (citing *Cox v. Keystone Carbon Co.*, 861 F.2d 390, 393 (3rd Cir.1988)).

Recently, in *Pegg v. General Motors Corp.*, 793 F.Supp. 284 (D.Kan.1992), Judge Crow of this District held that a right to a jury trial is generally not available in actions brought under ERISA § 502(a)(1)(B). Although the *Pegg* case was not based upon a violation of ERISA § 510, but was an action to recover unpaid benefits and backpay, the court thoroughly reviewed the existing case law on the right to a trial by jury in ERISA actions. *See id.* at 286. The court concluded that the Tenth Circuit would fall in line with the other circuits in finding that no right to jury trial existed. *Id.* The court also noted that the other judges of this District have consistently found no right to jury trial under ERISA. *Id.* (citing *Bass v. Prudential Ins. Co. of America*, 751 F.Supp. 192 (D.Kan.1990) (O'Connor, J.); *McGee v. Equicor–Equitable HCA Corp.*, No. 87–1721, 1990 WL 37932, (D.Kan. Mar. 26, 1990) (Kelly, C.J.); *Ershick v. Greb X–Ray Co.*, No. 87–2362, 1987 WL 208887 (D.Kan. Dec. 17, 1987) (Saffels, J.)).

Although plaintiff points out that neither *Pegg* nor *Bass* were actions for violations of

Section 510, both were brought under Section 502(a)(1)(B). The court sees no reason why claims for violations of Section 510 would be treated differently than other claims brought under Section 502.

Further, the court finds unpersuasive plaintiff's argument that the *Ingersoll–Rand* dicta recognizes the availability of extracontractual damages, and in turn, a right to jury trial. Although several district courts have taken this approach, *see, e.g., Vicinanzo v. Brunschwig & Fils, Inc.*, 739 F.Supp. 882 (S.D.N.Y.1990), and *Weber v. Jacobs Mfg. Co.*, 751 F.Supp. 21 (D.Conn.1990), this court is loath to follow such holdings in light of the circuit court opinions in *Harsch*, 956 F.2d at 660, and *McRae*, 920 F.2d at 821, discussed above.

Finally, the court notes that the Third Circuit has clearly rejected the argument that a plaintiff is entitled to a trial by jury on a claim for violation of Section 510. In *Cox v. Keystone Carbon Co.*, 861 F.2d 390 (3rd Cir.), *appeal after remand*, 894 F.2d 647 (3rd Cir.1990), the court concluded that neither ERISA § 502(a)(1)(B) nor Section 502(a)(3) entitled plaintiff to a jury trial on his claim that his employer discharged him in order to interfere with his attainment of employee benefits. This court agrees.

As characterized by plaintiff in her brief in support of her motion for reconsideration, plaintiff seeks remedies which include back pay, front pay, reinstatement, restitution of forfeited benefits, and other relief necessary to make plaintiff whole. In view of the court's striking her claims for punitive damages and for emotional distress damages, it appears to the court that the remedies sought by plaintiff are equitable in nature. Based upon the court's construction of the remedies sought, as well as its view of the case law regarding the right to a trial by jury in an action for violation of ERISA § 510, the court concludes that plaintiff is not entitled to a trial by jury on her ERISA claims.

IT IS, THEREFORE, BY THE COURT ORDERED that Plaintiff's Motion for Reconsideration (Doc. 68) is denied.

Copies of this order shall be mailed to counsel of record for the parties.

**IT IS SO ORDERED.**